JEFFREY COVINSKY, Plaintiff and Counterdefendant-Appellee and Cross-Appellant, v. HANNAH MARINE CORPORATION, Defendant and Counter-plaintiff-Appellant (Donald C. Hannah, Indiv., Defendant and Cross-Appellee).

First District (2nd Division)   Nos. 1—08—0695, 1—08—0779 cons.

Opinion filed February 17, 2009.—Rehearing denied March 19, 2009.

Kozacky & Weitzel, P.C., of Chicago (Paul J. Kozacky, Jerome R. Weitzelk, and John M. Sheldon, of counsel), and Christopher M. Saturnus, Attorney at Law, P.C., of Arlington Heights (Christopher M. Saturnus, of counsel), for appellant.

Law Offices of Ralph J. Schindler, Jr., of Chicago (Ralph J. Schindler, Jr., and Joshua M. Smith, of counsel), for appellee.

PRESIDING JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff Jeffrey Covinsky (Covinsky) was employed by defendant Hannah Marine Corporation (Hannah Marine). When Hannah Marine refused to pay him pursuant to a golden parachute provision in his employment contract, Covinsky filed a two-count action against Hannah Marine and its owner, defendant Donald C. Hannah (Hannah), asserting breach of contract against Hannah Marine and violation of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 2006)) (Wage Act or the Act) against Hannah and Hannah Marine. The circuit court granted summary judgment to Covinsky in his actions against Hannah Marine, found for Hannah on Covinsky's Wage Act claim against him, dismissed Hannah Marine's amended counterclaim against Covinsky for breach of fiduciary duty and awarded Covinsky damages, legal fees and costs. Hannah Marine appeals, asserting the court erred in (1) its legal interpretation of the contract; (2) granting summary judgment to Covinsky on his Wage Act and breach of contract claims against Hannah Marine; (3) denying Hannah Marine's request for a jury trial on damages; (4) its calculation of damages; (5) its award of legal fees and costs under the Wage Act; (6) dismissing Hannah Marine's amended counterclaim; and (7)

denying assorted discovery requests by Hannah Marine. Covinsky cross-appeals, arguing the court erred in (1) failing to award him fees and costs for his defense against Hannah Marine's counterclaims and his pursuit of the breach of contract claim and (2) refusing to enter judgment against Hannah on the Wage Act claim. We affirm in part, reverse in part and remand.

## Background

Covinsky was the president, chief executive officer and chief operating officer of Hannah Marine starting in 1998. He left this employment in 2006. The written employment contract between Covinsky and Hannah Marine applicable in 2006 provided in paragraph 7(g):

> "In the event that Hannah is sold, merged with another corporation, or there is a a change in the present ownership which results in the termination of the Employee's employment as President and Chief Executive Officer and Chief Operating Officer of Hannah, Hannah shall pay to Employee an amount equal to eighteen (18) months' salary as set forth under the contract salary rate then in existence."

At the time the agreement was executed in 2004, Hannah Marine was owned equally by Hannah, James A. Hannah, Jr., and Margaret Maloney. The board of directors consisted of James Hannah and John McNulty. In 2005, Hannah brought suit against James Hannah and Maloney, alleging mismanagement of Hannah Marine to his detriment. He subsequently agreed to buy James Hannah's and Maloney's interests in Hannah Marine.

In 2005, given Hannah's possible takeover of the corporation, Covinsky informed Hannah that he assumed Hannah would not want to continue his employment. He suggested a settlement of the liability Hannah Marine had under the employment contract. In April 2006, Covinsky told Hannah that he did not intend to resign and expected to fulfill the terms of his employment contract, which ran until February 28, 2007. In May 2006, Hannah finalized the sale and become sole owner and chief executive officer of Hannah Marine. James Hannah and McNulty resigned from the board of directors. On May 10, 2006, Hannah informed Covinsky that his employment was terminated immediately and that he "accepted" Covinsky's resignation. Covinsky protested that he never resigned. On March 19, 2006, Covinsky received a check from Hannah Marine covering his salary until May 10, 2006.

Covinsky demanded Hannah Marine honor the employment contract and pay him severance due under paragraph 7(g) of the contract. Hannah Marine refused. Covinsky filed a two-count

complaint in the circuit court against Hannah Marine and Hannah. He asserted Hannah Marine breached the employment contract because his employment was terminated as result of a change in ownership of the corporation and he was, therefore, due 18 months' salary and benefits as provided by paragraph 7(g). He also asserted Hannah Marine and Hannah, as its chief executive officer and the officer responsible for payment of final compensation to employees, violated the Illinois Wage Act by not paying Covinsky his final compensation, the sums due under the employment contract, at time of his termination or by his next regularly scheduled payday as required by the Act.

Hannah Marine answered, asserting paragraph 7(g) did not apply because Covinsky resigned and his termination did not result from a change in ownership. It filed an amended counterclaim alleging breach of fiduciary duty.

The court granted summary judgment to Covinsky against Hannah Marine on both his breach of contract and Wage Act claims. The court found Hannah's acquisition of all shares of Hannah Marine constituted a change in ownership of Hannah Marine as defined in paragraph 7(g); this change in ownership resulted in Covinsky's termination; paragraph 7(g) of the employment contract applied whether Covinsky voluntarily resigned on the date Hannah took sole ownership or was involuntarily terminated; Covinsky was owed the severance provided in paragraph 7(g); and his demand for final compensation was protected by the Wage Act. The court did not decide whether Covinsky voluntarily resigned or was involuntarily terminated but, for purposes of the summary judgment motion, assumed he resigned. The court merged Hannah Marine's liability for breach of contract with its liability for the Wage Act violation and awarded Covinsky salary and benefits totaling $311,653 plus interest as his final compensation pursuant to paragraph 7(g). Pursuant to the Illinois Attorneys Fees in Wage Actions Act (705 ILCS 225/1 *et seq.* (West 2006)) (Wage Actions Act), it awarded Covinsky $11,747.91 for attorney fees and costs he incurred in prosecuting the Wage Act claim against Hannah Marine.

The court dismissed Hannah Marine's amended counterclaim and gave it leave to file a second amended counterclaim, which it did not do. Given its ruling in favor of Covinsky, the court denied Hannah Marine's requests to complete compliance with certain discovery requests, take additional depositions and perform additional discovery. The court dismissed Covinsky's Wage Act claim against Hannah personally. Both Hannah Marine and Covinsky timely filed notices of appeal from the court's February 19, 2008, order. The appeals have been consolidated here.

## Analysis

### Breach of Contract Claim

The court granted summary judgment to Covinsky on his breach of contract claim against Hannah Marine, finding Hannah Marine breached its employment contract with Covinsky when it failed to pay him pursuant to the terms provided in paragraph 7(g) of the contract. Summary judgment is proper where there are no disputed questions of fact and the moving party is entitled to judgment as a matter of law. *Kennedy v. Four Boys Labor Services, Inc.*, 279 Ill. App. 3d 361, 365, 664 N.E.2d 1088, 1090 (1996). The purpose of summary judgment is not to try a question of fact but to determine whether one exists. *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 462, 786 N.E.2d 1010, 1014 (2003). We review a trial court's grant of summary judgment *de novo*. *Kennedy*, 279 Ill. App. 3d at 366, 664 N.E.2d at 1090.

Whether a breach of contract has occurred generally is not a legal question subject to *de novo* review but rather a question of fact which will not be disturbed unless the finding is against the manifest weight of the evidence. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 81, 866 N.E.2d 85 (2006). However, "[w]here only the construction of a contract is at issue, the legal effect and interpretation of the contract is a question of law, and summary judgment is proper." *Kennedy, Ryan, Monigal & Associates, Inc. v. Watkins*, 242 Ill. App. 3d 289, 295, 609 N.E.2d 925, 928 (1993). The parties disputed whether Covinsky resigned or was involuntarily terminated but, given the court's decision that paragraph 7(g) applied regardless of whether Covinsky voluntarily resigned or was involuntarily terminated, the court determined that it did not need to make this factual determination and resolved the case by construing the parties' employment contract. We review the court's grant of summary judgment *de novo*.

The main issue to be resolved is whether the word "termination" as used in paragraph 7(g) encompasses both a voluntary resignation and an involuntary termination. Paragraph 7(g) provides:

> "In the event that Hannah is sold, merged with another corporation, or there is a change in the present ownership which results in the termination of the Employee's employment as President and Chief Executive Officer and Chief Operating Officer of Hannah, Hannah shall pay to Employee an amount equal to eighteen (18) months' salary as set forth under the contract salary rate then in existence."

Hannah Marine argues "termination" as used in paragraph 7(g) means only an involuntary termination. Covinsky argues it means both a voluntary resignation and an involuntary termination.

The primary goal of contract interpretation is to give effect to the

parties' intent. *Joyce v. DLA Piper Rudnick Gray Cary LLP*, 382 Ill. App. 3d 632, 636-37, 888 N.E.2d 657, 662 (2008). To this end, we interpret a contract as a whole and apply the plain and ordinary meaning to unambiguous terms. *Joyce*, 382 Ill. App. 3d at 637, 888 N.E.2d at 662. Ambiguities in a contract are resolved against the drafter of the contract.[1] *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 493, 505 N.E.2d 314, 319 (1987). A contract term is ambiguous when it may reasonably be interpreted in more than one way but is not rendered ambiguous merely because the parties disagree on its meaning. *Joyce*, 382 Ill. App. 3d at 637, 888 N.E.2d at 662; *Dean Management, Inc. v. TBS Construction, Inc.*, 339 Ill. App. 3d 263, 269, 790 N.E.2d 934, 939 (2003).

■ The employment contract does not define the word "termination." Therefore, we must give it its common and generally accepted meaning. *Dean Management, Inc.*, 339 Ill. App. 3d at 269, 790 N.E.2d at 939. Black's Law Dictionary defines "termination" as the "act of ending something" and "termination of employment" as "[t]he complete severance of an employer-employee relationship." Black's Law Dictionary 1482 (7th ed. 1999). Webster's Dictionary defines "termination" as "CLOSE, CESSATION, CONCLUSION" and "the act of terminating" as "bringing to an end or concluding" as in "voluntary [termination] of an agreement." Webster's Third New International Dictionary 2359 (1986). Accordingly, giving "termination" its plain and ordinary meaning in an employment context, it means an end to employment and could mean a voluntary resignation, an involuntary termination or both. The partes dispute which meaning is intended in paragraph 7(g). However, reading paragraph 7(g) in context with the entire contract, "termination" as used therein is not at all ambiguous and clearly refers to an involuntary termination, not to a voluntary resignation.

Paragraph 7(g) is in section 7 of the contract, a section titled "Early Termination." Section 7 provides, "Employee's employment hereunder as President of Hannah [Marine] and the related rights of the Employee under this agreement may be terminated in the following circumstances and on the following terms:" and then sets forth paragraphs (a) through (g).

Paragraph 7(a) provides the contract will terminate automatically if the employee dies during the term of the contract.

---

[1]The circuit court stated that a question of fact existed regarding who drafted the contract. Accordingly, if we find paragraph 7(g) ambiguous, we must remand for a determination of who drafted the contract so that the ambiguity can be held against the drafter.

Paragraph 7(b) provides Hannah Marine may terminate the contract if, after a period of six months and because of a disability or illness arising during the employment term, the employee is unable to perform the essential functions of his position.

Paragraph 7(c) provides Hannah Marine may terminate the employment upon 10 days' written notice if the employee has failed to perform any substantial portion of his duties for reasons other than illness, disability, breach of the contract by Hannah Marine or other circumstances beyond the employee's control, such termination to occur only after Hannah Marine has given the employee notice of his failure to perform and a 90-day period in which to improve his performance.

Paragraph 7(d) provides Hannah Marine may terminate the employment in the event of an act by the employee involving deliberate dishonesty, fraud, material misrepresentation or moral turpitude.

Paragraph 7(e) provides that, after termination pursuant to any of provisions 7(a) through 7(d), Hannah is only liable to the employee for any salary earned but not paid as of the termination date and benefits and reimbursement to which the employee is entitled.

Paragraph 7(f) provides that Hannah Marine may terminate the employment at any time without cause but must pay the employee liquidated damages of one year's salary in the amount of the employee's annual salary at the time of termination and the employee is entitled "to participate on the same basis as all other employees in all medical and dental employee benefit programs" for 12 months following the termination and, thereafter, through Cobra.

Paragraph 7(g), at issue here, provides that if "there is a change in the present ownership which results in the termination" of the employee's employment, Hannah Marine "shall pay to Employee an amount equal to eighteen (18) months' salary as set forth under the contract salary rate then in existence."

Paragraphs (a) through (f) of section 7 clearly provide for involuntary terminations of employment. Paragraphs 7(a), 7(b), 7(c), and 7(d) provide for terminations for cause, imposed on the employee as a result of the employee's own circumstance or behavior which impairs his usefulness to or harms the company: his death, illness or disability, failure to perform or dishonesty. Presumably because the cause for a paragraph 7(a) through paragraph 7(d) termination lies with the employee, paragraph 7(e) provides that there will be no additional severance paid under any of those circumstances. In contrast, paragraph 7(f) provides for a termination without cause, imposed upon the employee through no cause of his own and, therefore, subject to a payout worth 12 months' salary and possible participation in

some benefit programs. Based on paragraphs 7(a) through 7(f), the title of section 7, "Early Termination," would appear to refer to early termination of the employment *by* Hannah Marine, *i.e.*, to involuntary termination, with or without cause. How then to interpret paragraph 7(g)?

Reading paragraph 7(g) in context with the rest of section 7, it follows that the "termination" of employment resulting from a merger or change in ownership of Hannah Marine must also be an involuntary termination, a termination imposed upon the employee rather than one initiated by the employee. Granted, there is another form of "early termination": voluntary resignation. But we do not read paragraph 7(g) as including this eventuality. To interpret "termination" in paragraph 7(g) as including voluntary resignation means that the employee who voluntarily resigns upon a sale, merger or change in ownership of his employer gets rewarded with 18 months' salary for his inability or refusal to work with the new owner or management. If a paragraph 7(g) "termination" encompasses a voluntary resignation, the employee has no incentive to continue in his position and to make the transition to the new owner/management because he knows, if he resigns upon the transition, he will receive a substantial payout. He will be rewarded for not doing his job. As in paragraphs 7(a) through 7(d), his termination will result from his own choice and circumstance and cause harm or inconvenience to Hannah Marine but, unlike in paragraphs 7(a) through 7(d), he would be rewarded for making that choice. This makes no sense.

Looking at the rest of the employment contract, there is only one reference to resignation. In section 8 of the contract, the covenant not to compete, the employee agrees not to compete with Hannah Marine "for a period of twelve (12) months after termination of Employee's employment with Hannah [Marine] for any reason with cause or should Employee resign or otherwise terminate his Employment." We agree with Covinsky that use of the phrase "resign or otherwise terminate" suggests that a "termination" includes a resignation. This does not mean, however, that every use of the word "termination" in the contract is intended to encompass both a voluntary resignation and an involuntary termination. Reading it as such, for example in paragraphs (a) through (f) of section 7, shows that this interpretation of "termination" does not work. The phrase "resign or otherwise terminate" shows that the contract recognizes a difference between a resignation and "other" terminations. If the parties had intended that a resignation upon a change of ownership could activate paragraph 7(g), they could have specified such.

■ The upshot of the above is that "termination" as used in

paragraph 7(g) does not encompass a voluntary resignation. Accordingly, the question of how Covinsky's employment terminated, whether he voluntarily resigned or was involuntarily terminated, will determine whether paragraph 7(g) applies to his termination and whether Hannah Marine breached the contract by refusing to pay severance pursuant to paragraph 7(g). If Hannah Marine terminated Covinsky's employment, paragraph 7(g) applies, Covinsky is due the severance payout and Hannah Marine breached the contract by refusing to pay it. If Covinsky voluntarily resigned his employment, paragraph 7(g) does not apply, Covinsky is due nothing beyond the amounts he received upon his termination and Hannah Marine did not breach the contract. The question of how Covinsky's employment terminated is a material question of fact that must be resolved in the circuit court. We, therefore, reverse the grant of summary judgment to Covinsky on his breach of contract claim and remand to the circuit court for further proceedings.

## Wage Act Claim Against Hannah Marine

■ The court granted summary judgment to Covinsky on his Wage Act claim against Hannah Marine. Pursuant to the Wage Act, "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5 (West 2006). The Act defines "final compensation" as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2 (West 2006). The court found Hannah Marine violated the Wage Act because it failed to pay Covinsky his final compensation, in the form of a paragraph 7(g) severance payout, within the statutory period.

We agree with the circuit court that any amounts due Covinsky under paragraph 7(g) meet the definition of final compensation under the Wage Act. Any termination benefits he is owed under his employment contract with Hannah Marine clearly meet the definition of "any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties."

■ However, the Wage Act does not apply if there is no final compensation to collect. And Covinsky has no final compensation to collect if paragraph 7(g) does not apply to his termination. The determination of whether paragraph 7(g) applies to Covinsky's termination has been remanded to the circuit court. Since the determination of whether the Wage Act applies is dependent on the

court's determination of whether paragraph 7(g) applies, we reverse the court's grant of summary judgment to Covinsky on his Wage Act claim against Hannah Marine and remand for further proceedings.

## Wage Act Claim Against Hannah Personally

■ Covinsky argues the court erred in "dismissing" his Wage Act claim against Hannah personally. The Wage Act provides that "[a]ny officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13 (West 2006). If Hannah meets this definition, he is an "employer" under the Wage Act and can be held individually liable to Covinsky. *Catania v. Local 4250/5050 of the Communications Workers of America*, 359 Ill. App. 3d 718, 724-25, 834 N.E.2d 966, 972 (2005). Given our remand of the breach of contract claim, the determination of Hannah's personal liability under the Wage Act is dependent on the court's determination of whether paragraph 7(g) applies and we need not address it. We recognize that the court found in favor of Hannah on the claim after making the factual determination, following extensive briefing on the issue, that he did not meet the definition of "employer" under the Act. This question of fact was for the court to make, and if the Wage Act claims arise again on remand, the court may make the same determination.

## Dismissal of Hannah Marine's Amended Counterclaim

Hannah Marine argues the court erred in dismissing its amended counterclaim against Covinsky for breach of fiduciary duty for failure to state a cause of action pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 2006)). The counterclaim alleges that, pursuant to a 99-year lease set to expire in 2050, Hannah Marine leases property along the Chicago Sanitary and Ship Canal from the Metropolitan Sanitary District of Greater Chicago. Hannah Marine pays rent to the District for that property and can sublease the property. In 1999, upon approval by the District, Covinsky executed a contract, on behalf of Hannah Marine, to sublease 8.1 acres of the property to Holnam, Inc., until 2050.

The sublease provided that Holnam would pay to Hannah Marine as rent:

> "an amount equal to the differential between the monthly base rent, paid by [Hannah Marine] to the [District] and the rent to be acceptable [*sic*] by [Holnam] determined by the [District] to be the additional rent to be paid under the [District's] determination of the fair market value rent to be paid by [Holnam] upon approval by the [District] of this sublease. [Hannah Marine] shall pay the

total monthly rental as calculated above to the [District] and then bill [Holnam] for the amount of the differential."

Hannah Marine asserted in its counterclaim that Covinsky breached his fiduciary duty to Hannah Marine by subleasing part of its property to Holnam for no consideration knowing that the sublease had value, causing Hannah Marine to lose use of 8.1 dockside acres of property and be damaged for more than $600,000, the approximate value of the sublease.

Covinsky moved to dismiss the counterclaim pursuant to section 2—619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 2—619(a)(9) (West 2006)). Citing the business judgment rule, the court found the counterclaim failed to set forth any actions by Covinsky that would constitute a breach of fiduciary duty. It, therefore, granted the motion to dismiss the counterclaim, albeit for failure to state a cause of action pursuant to section 2—615 rather pursuant to section 2—619(a)(9) as urged by Covinsky.

A motion to dismiss based on section 2—615 attacks the legal sufficiency of the complaint, challenging a complaint for failure to state a cause of action. *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 29, 801 N.E.2d 1103, 1109 (2003); *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584, 736 N.E.2d 1174, 1178 (2000). In contrast, a motion to dismiss based on section 2—619 admits the legal sufficiency of the complaint and presumes a valid cause of action exists but raises defects, defenses or other affirmative matters which appear on the face of the complaint or are established by external submissions which negate the plaintiff's cause of action. *Neppl*, 316 Ill. App. 3d at 584, 736 N.E.2d at 1178. Covinsky's motion was clearly not a section 2—619(a)(9) motion to dismiss. He neither admitted the legal sufficiency of the counterclaim nor presented an affirmative matter defeating the claim. Instead, he attempted to negate the essential elements of the breach of fiduciary duty claim as would be appropriate under section 2—615. The court was correct in granting the motion to dismiss pursuant to section 2—615. We review the court's grant of a motion to dismiss under section 2—615 *de novo*. *Neppl*, 316 Ill. App. 3d at 584, 736 N.E.2d at 1178.

Viewing the counterclaim in the light most favorable to Hannah Marine and accepting all well-pled facts as true, we must determine whether it alleges facts sufficient to state a cause of action upon which relief may be granted. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 46-47, 566 N.E.2d 1365, 1366 (1991). To state a claim for breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach. *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 32, 801 N.E.2d 1103, 1111 (2003).

The counterclaim sufficiently alleged that, as Hannah Marine's president, Covinsky owed Hannah Marine fiduciary duties, including duties of loyalty, good faith and fair dealing. Individuals who control corporations, such as corporate officers and directors, owe fiduciary duties to their employers, including duties of honesty and good faith in their handling of business assets. *Jaffe Commercial Finance Co. v. Harris*, 119 Ill. App. 3d 136, 143, 456 N.E.2d 224, 230 (1983).

The counterclaim did not sufficiently allege that Covinsky breached that fiduciary duty. It alleged that Covinsky granted the sublease without demanding compensation and with knowledge that the property was valuable to Hannah Marine in terms of use and possible rental income and these actions breached his fiduciary duties to Hannah Marine. It cannot be said that there is no compensation provided to Hannah Marine under the sublease. Granted, the advantage to Hannah Marine of the sublease to Holnam is debatable. The rent provision in the sublease appears to provide that Hannah Marine will continue to pay rent on the property to the District and Holnam will only pay Hannah Marine any differential between the current rent Hannah Marine is paying the District and any future market rate rent increase as determined by the District, if such occurs. Besides being a confusing provision, it contradicts the "consent to sublease" agreement executed by the District and Holnam, which provides that Holnam will pay the rent directly to the District. Nevertheless, it does provide for some possible compensation and the factual allegation that Covinsky demanded no compensation cannot stand.

■ Covinsky may not have made a good bargain for Hannah Marine when he executed the sublease with Holnam and he may have known that a sublease can be a valuable asset given the amount Hannah Marine received under another sublease negotiated by Covinsky, but there is nothing to show he breached his duty of loyalty to Hannah Marine, that he did not enter into the lease with the good-faith belief that he was furthering the interests of Hannah Marine, that he purposely entered into a bad bargain or that he personally benefitted from the sublease. There are no facts alleged that support a finding that Covinsky breached his fiduciary duty to Hannah Marine. The court did not err in dismissing Hannah Marine's amended counterclaim for breach of fiduciary duty.

## Remaining Issues

In light of our remand, we need not decide the remaining issues raised by the parties. However, we will address two issues regarding the court's damage award which are likely to arise again on remand,

the damages for breach of contract and the denial of Hannah Marine's jury request.

## Damages for Breach of Contract

Hannah Marine argues the court erred in awarding Covinsky fringe benefits in addition to salary because there are material issues of fact regarding the final compensation due under the contract. It asserts the early termination provisions of the contract do not entitle Covinsky to the value of the 401(K) plan, the medical plans or the company car in addition to his salary. We agree.

Upon an early termination meeting the requirements of paragraph 7(g) of the contract, Hannah Marine "shall pay to Employee an amount equal to eighteen (18) months' salary as set forth under the contract salary rate then in existence." Section 3 of the contract, entitled "Salary and Employee Benefits," provides that during the term of the contract, the employee

"shall receive for his service a salary as follows:

(a) during the period from March 1, 2004 to February 28, 2005, a salary at the rate of $162,240 annually;

(b) during the period from March 1, 2005 to February 28, 2006, a salary at the rate of $170,352 annually;

(c) during the period from March 1, 2006 to February 28, 2007, at a salary to be agreed upon between Employee and [Hannah Marine], but not to be less than the amount in 3(b) above.

Said salary shall be paid in accordance with the normal payroll and procedures.

In addition, Employee shall be entitled during the period of employment hereunder to participate on the same basis as all other employees in all employee benefit programs (including, without limitation, any such programs providing vacation, sick leave, retirement beneifts, disabilty beneifts, life insurance, medical insurance or dental insurance) maintained by [Hannah Marine] from time to time, subject to the legibility [sic] and participation rules in effect from time to time for such programs. Employee shall each year be entitled to a vacation period of five (5) weeks which shall not include more than two (2) consecutive weeks at any one time.

Additionally, the Employee shall be entitled to a Company car similar in model and style to the Company cars of other employees of [Hannah Marine]. Such car shall be used for Company business and the Employee shall be reimbursed in accordance with Company policy incurred in the operation of the vehicle."

It is clear from the above that the contract differentiates between "salary" and "benefits." Section 3 first sets out the amount the employee will receive as salary and provides that the salary will be

paid in accordance with "normal" payroll procedures, presumably those applicable to all employees of Hannah Marine, including those not employed under a contract. It then provides that, "in addition," the employee is "entitled during the period of employment hereunder to participate on the same basis as all other employees in all employee *benefit* programs." The fact that the contract states that the employee's entitlement to participate in the benefit programs is "in addition" to his salary makes clear that the benefits are not part of his salary. Section 3 neither equates "salary" with "benefits" nor subsumes the description of the employee's "benefits" within the description of his "salary." Reimbursement for the employee's use of a company car is similarly an "additional" benefit not encompassed by salary.

Accordingly, paragraph 7(g)'s provision for "eighteen (18) months' salary as set forth under the contract salary rate then in existence" would mean an employee terminated because of a change in ownership would be due 18 months' salary at the salary rate in existence at the time of termination but no additional benefits such as insurance or reimbursement for a company car. Such benefits are in addition to the salary, not part of the "salary rate."

This determination is reinforced when we look at paragraph 7(f), which provides that if Hannah Marine terminates the employee "without cause," it will pay the employee liquidated damages of an amount equal to one year's salary at the employee's then current rate and, "[f]urther, Employee shall be entitled during the 12 month period after termination under this section (f) to participate on the same basis as all other employees in the medical and dental employee benefit programs maintained by [Hannah Marine]" and, after the 12-month period, to participate in those programs through Cobra.

■ Paragraph 7(f) specifically awards the employee the right, upon termination, to participate in two of the benefit programs. Paragraph 7(g) does not make the same provision. It only provides for salary. It does not provide for any benefits, whether those be insurance programs, 401(K) plans or use of a company car. Accordingly, pursuant to paragraph 7(g), an employee terminated as a result of a change in ownership is due 18 months' salary, not 18 months' salary plus benefits. The court erred in calculating damages to include the benefit amounts.

### Jury Denied

■ Hannah Marine also argues the court erred in denying its request for a jury trial on damages for the breach of contract claim. Covinsky had requested a jury but withdrew his request after the

court found in his favor on the breach of contract claim. Hannah Marine then requested a jury on the damage award but the court denied the request. Given our determination that the severance amount due under paragraph 7(g) is limited to 18 months' salary, the determination of this amount under the breach of contract claim is clear and no jury is required to make the determination. Further, there is no right to a jury trial for actions filed under the Wage Act. *Catania*, 359 Ill. App. 3d at 725, 834 N.E.2d at 973.

For the reasons stated above, we affirm the decision of the circuit court dismissing Hannah Marine's counterclaim, reverse the court's grant of summary judgment to Covinsky on his breach of contract and Wage Act claims and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

SOUTH and CUNNINGHAM, JJ., concur.