2018 IL App (4th) 170015

NO. 4-17-0015

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| ILLINOIS MUNICIPAL LEAGUE RISK MANAGEMENT ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Sangamon County |
| Plaintiff-Appellee, | ) ) | No. 12MR230 |
| v. | ) ) | |
| CITY OF COLLINSVILLE, ILLINOIS, an Illinois Municipal Corporation, and MARK SCHMIDT, | ) ) ) | |
| Defendants | ) ) | Honorable John P. Schmidt, |
| (City of Collinsville, Illinois, Defendant-Appellant). | ) ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices Holder White and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, the City of Collinsville, Illinois, an Illinois municipal corporation (City), appeals from the trial court's order granting summary judgment in favor of plaintiff, the Illinois Municipal League Risk Management Association (Association). On appeal, the City argues the trial court erred in finding the Association had no obligation to defend or indemnify it against claims asserted in Madison County case No. 11-L-1306. We disagree and affirm.

¶ 2                              I. BACKGROUND

¶ 3                    A. Complaint for Declaratory Judgment

¶ 4        In March 2012, the Association filed a complaint for declaratory judgment under section 2-701 of the Code of Civil Procedure (735 ILCS 5/2-701 West 2010)), which it later amended. The amended complaint was filed against the City and Mark Schmidt. Schmidt is not a party to this appeal. In its amended complaint, the Association sought a declaration providing it had no obligation to defend or indemnify the City against claims asserted in Madison County case No. 11-L-1306.

¶ 5                    1. *Madison County Case No. 11-L-1306*

¶ 6        The pertinent facts of Madison County case No. 11-L-1306 are not in dispute. Schmidt, on both behalf of himself and a putative class (the plaintiffs), filed a complaint against the City relating to the enforcement of a local ordinance. The ordinance required an individual whose vehicle has been towed and impounded in connection with certain criminal offenses to pay a $500 administrative fee to the City prior to obtaining the release of his or her impounded vehicle. The plaintiffs argued the ordinance violated their due process rights because the administrative fee was not related to the costs of services provided and served no rational purpose. They requested the trial court to "award the return of all monies received by [the City] to date and to the time of trial in this cause via assessment of the [a]dministrative [f]ee, award costs of suit[,] and for all other relief to which [the plaintiffs] may be entitled." See generally *Carter v. City of Alton*, 2015 IL App (5th) 130544, 32 N.E.3d 1129 (reversing the trial court's dismissal of plaintiffs' complaint and remanding for further proceedings).

¶ 7        As part of their request for class certification, the plaintiffs asserted certain common questions of law and fact existed, including whether (1) the administrative fee violated their due process or other constitutional rights, (2) injunctive or declaratory relief was proper,

- 2 -

and (3) the City willfully and wantonly instituted the administrative fee. The plaintiffs also asserted class certification was proper, as each individual "claim *** [was] relatively small, so that individual litigation [was] not economically feasible[,] [and the City] derive[d] enormous aggregate profits from depriving [them] of the amount of [$500] each."

¶ 8                                     2. *Coverage Grants*

¶ 9          The Association had issued to the City certain "coverage grants," which undisputedly were effective during the period the plaintiffs' alleged injuries occurred. The coverage grants provided the City with different types of liability coverage. The coverage grants are separated into parts. The following parts, and their contents, are relevant to this appeal.

¶ 10         Part "RMA 1" provides general liability coverage. It provides: "The Association will pay on behalf of the Members [(City)] all sums which the Members [(City)] shall become legally obligated to pay as damages, defined as 'ultimate net loss', because of 'bodily injury' or 'property damage' to which this form applies; caused by an 'occurrence' within the 'coverage territory'." Part RMA 1 sets forth specific exclusions to coverage. The exclusions primarily exclude coverage where the "bodily injury" or "property damage" arises from a particular situation, such as the use of an automobile owned by the City.

¶ 11         Several "endorsements" to part RMA 1 are contained in part "RMA 2." These endorsements extend coverage, subject to certain exclusions. Section VIII of part RMA 2 extends coverage to certain violations of an individual's civil or constitutional rights. It provides in part: "The Association will pay on behalf of the Members [(City)] all sums which the Members [(City)] shall become legally obligated to pay, defined as 'ultimate net loss', because of: (1) 'bodily injury', 'property damage', 'personal injury'[,] or 'advertising injury' arising out

of a violation of civil or constitutional rights *** but only if such damages are sought in a civil suit brought under one or more of the following civil rights statutes: United States Code Title 42 §§ 1981, 1982, 1983, 1985[,] or 1986[.]"

¶ 12        Additional endorsements to parts RMA 1 and RMA 2 are contained in part "RMA 3." These endorsements set forth further exclusions to coverage provided by parts RMA 1 and RMA 2. Similar to the exclusions set forth in part RMA 1, the exclusions in part RMA 3 exclude coverage primarily where the "bodily injury" or "property damage" arises from a particular situation, such as the use of a gas plant.

¶ 13        Parts RMA 1, RMA 2, and RMA 3 are subject to the definitions provided in part "RMA L." Part RMA L defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in 'bodily injury', 'property damage'[,] or other covered damages neither expected nor intended from the standpoint of the Members [(City)] involved[.]" Part RMA L defines "property damage" as "(1) physical injury to or destruction of tangible property which occurs during the 'coverage period', including the loss of use thereof at any time resulting therefrom; or (2) loss of use of tangible property which has not been physically injured or destroyed, provided such loss of use is caused by an 'occurrence' during the 'coverage period'[.]"

¶ 14        Part "RMA 4" provides coverage for liability relating to certain acts committed by public officials and employees. It provides in part: "The Association will pay on behalf of the Member [(City)] all 'loss' which the Members [(City)] shall be legally obligated to pay because of a 'wrongful act' occurring during the 'coverage period'." Part RMA 4 provides definitions in addition to those in part RMA L. It defines "loss" as "any amount which the Member [(City)] is

legally obligated to pay or which the Member [(City)] shall be required by law to pay as indemnity to the Members [(City)], for any claim or claims made against them for 'wrongful acts' and shall include but not be limited to: damages, judgments, settlements and costs[;] cost of investigation and defense of legal actions (excluding from such cost the salaries of officials or employees of the Member [(City)] or any other governmental body); claims of proceedings and appeals therefrom; cost of attachment or similar bonds; provided always, however, such subject of 'loss' shall not include: fines or penalties imposed by law; exemplary or punitive damages; that portion of a judgment whereby compensatory damages have been multiplied; or matters which may be deemed uninsurable under the law pursuant to which this form shall be construed." It defines "wrongful act" as "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by any Members [(City)][.]" Part RMA 4 sets forth specific exclusions to coverage. One of those exclusions provide: "The Association shall not be liable to make payments for 'loss' in connection with any claim made against the Members [(City)] based upon or arising out of or in any way related to *** any violation of civil or constitutional rights."

¶ 15          B. Association's Amended Motion for Summary Judgment

¶ 16          In July 2016, the Association filed a motion for summary judgment, which it later amended. In its amended motion, the Association argued the City was not entitled to coverage as the claims made in Madison County case No. 11-L-1306 did not fit within the issued coverage grants. Specifically, as to the applicability of part RMA 1, the Association argued, in part, the City was not entitled to coverage, as the plaintiffs did not assert (1) they "suffered any physical injury to or destruction of any tangible property *** or *** loss of use of such property", or

(2) "an accident [occurred] resulting in damages neither expected nor intended from the standpoint of the City." As to the applicability of section VIII of part RMA 2, the Association argued, in part, the City was not entitled to coverage, as the plaintiffs did not (1) assert they suffered "property damage," or (2) seek relief for an alleged violation of their constitutional rights under any of the covered civil rights statutes. Finally, as to the applicability of part RMA 4, the Association argued, in part, the City was not entitled to coverage as any alleged wrongful acts causing a violation of the plaintiffs' constitutional rights were explicitly excluded from coverage.

¶ 17                    C. City's Response to the Association's Amended
                               Motion for Summary Judgment

¶ 18          In October 2016, the City filed a response to the Association's amended motion for summary judgment. The City requested the trial court deny the Association's amended motion and order the Association to provide a defense and indemnification because it was entitled to coverage under part RMA 1 of the coverage grants. In asserting coverage existed under part RMA 1, the City specifically presented argument under the "loss of use" prong of the property damage provision—providing coverage where it is alleged the City caused a "loss of use of tangible property which has not been physically injured or destroyed." As to whether a "loss of use of tangible property" was alleged, the City simply asserted "[t]here can be little argument that the return of the money the plaintiffs seek in the underlying case is a form of 'tangible property' that can be touched, seen, smelled, tasted, weighed, and even written upon." As to whether an "occurrence" caused the loss of use of tangible property, the City argued an "accident," which was an undefined term that should be construed strictly against the

- 6 -

Association, occurred, as the alleged injuries to the plaintiffs was neither expected nor intended. In making its "occurrence" argument, the City acknowledged it intended for the plaintiffs to pay the administrative fee in exchange for the release of their impounded vehicles but asserted it was not aware it may not have been legally authorized to charge such a fee and the underlying complaint contained no allegations suggesting the City intended to cause the alleged property damage.

¶ 19            D. The Association's Reply to the City's Response to Its
Amended Motion for Summary Judgment

¶ 20         In November 2016, the Association filed a reply to the City's response to its amended motion for summary judgment. In its reply, the Association maintained the City was not entitled to coverage under part RMA 1 of the coverage grants because there was no "property damage" or "occurrence."

¶ 21         The Association argued there was no "property damage" as defined by the "loss of use" prong of the property damage provision because the plaintiffs did not allege (1) a loss of use (2) of tangible property. The Association asserted the claim against the City was for intangible, economic losses, as the plaintiffs were not seeking the return of the actual $500 in currency with which they paid the administrative fee but rather the exchange value of the $500 paid. The Association further asserted, even if the $500 paid for the administrative fee was tangible property, the plaintiffs did not claim a "loss of use" of such property. Rather, relying primarily on *Collin v. American Empire Insurance Co.*, 26 Cal. Rptr. 2d 391 (Ct. App. 1994), and *Advanced Network, Inc. v. Peerless Insurance Co.*, 119 Cal. Rptr. 3d 17 (Ct. App. 2010), the Association argued the plaintiffs were seeking to recover only the monies of which they were

permanently deprived by paying the nonrefundable administrative fee.

¶ 22        The Association argued there was no "occurrence" because the plaintiffs did not allege their injuries were caused by the City's accidental conduct. The Association asserted, in part, the natural and ordinary consequence of the passing of the ordinance was individuals paying the administrative fee to recover their automobiles. The Association further asserted whether the City knew or should have known the ordinance might be unconstitutional is irrelevant, as ignorance of the law was no excuse.

¶ 23        E. Hearing on the Association's Amended Motion for Summary Judgment

¶ 24        In December 2016, the trial court held a hearing on the Association's amended motion for summary judgment. The parties largely followed their written arguments. In part, the Association argued the plaintiffs were not seeking recovery for loss of use of the monies paid to satisfy the administrative fee but rather only the return of the value they actually paid. Conversely, the City suggested:

> "[The] plaintiff[s'] concern is that they're saying they have lost
>
> their property, their $500; that they have been deprived of that
>
> money. They have been deprived of that money in their pocket.
>
> They have been deprived of the use of that money. They have been
>
> deprived of it, for lack of a better term, the interest."

¶ 25        After considering the arguments presented, the trial court granted the Association's amended motion for summary judgment, finding the Association had no obligation to defend or indemnify the City against the claims asserted in Madison County case No. 11-L-1306 under the coverage grants. By way of docket entry, the court indicated it found "[t]he

- 8 -

damages sought in [Madison County case No. 11-L-1306] [were] not the loss of property damages as defined by the contract between [the Association] and the City."

¶ 26       This appeal followed.

¶ 27                          II. ANALYSIS

¶ 28       On appeal, the City argues the trial court erred by awarding summary judgment in favor of the Association. Specifically, the City asserts the court erred by finding the Association had no obligation to defend or indemnify it against the claims asserted in Madison County case No. 11-L-1306 under part RMA 1 of the coverage grants.

¶ 29       Disposition by summary judgment is proper only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). While the City did not file a cross-motion for summary judgment, it agreed the case presented only questions of law and invited the trial court to decide these legal questions on the record presented. On appeal, the City does not assert summary judgment was improperly granted due to the existence of a disputed issue of material fact. Instead, the City contests the trial court's legal findings—its interpretation of the coverage grants—on which its decision to award summary judgment was based. We review the court's legal findings on which it based its decision to award summary judgment *de novo* and may affirm the court's judgment on any basis supported by the record, regardless of the court's reasoning. See *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34, 77 N.E.3d 639; *Covinsky v. Hannah Marine Corp.*, 388 Ill. App. 3d 478, 483, 903 N.E.2d 422, 426-27 (2009).

¶ 30       The City argues it is entitled to coverage under the "loss of use" prong of the

property damage provision as applied to part RMA 1 of the coverage grants because the plaintiffs have alleged the loss of use of their tangible property caused by an occurrence. The Association disagrees, contending (1) the money the plaintiffs paid for the administrative fee is not tangible property, (2) the plaintiffs have not alleged the "loss of use" of their money, and (3) any injury was not caused by accident. To determine whether the City is entitled to coverage, we review both the language of the coverage grants as well as the allegations of the underlying complaint. *Westfield Insurance Co. v. West Van Buren, LLC*, 2016 IL App (1st) 140862, ¶ 13, 59 N.E.3d 877.

¶ 31     We turn first to the language of the coverage grants. Our primary objective in analyzing the coverage grants is to ascertain and give effect to the parties' intentions as expressed by the policy language, which we construe in its plain and ordinary meaning. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362-63, 860 N.E.2d 307, 314 (2006). Like any contract, we construe the coverage grants as a whole, giving effect to every provision, if possible, as it is assumed every provision was intended to serve a purpose. *Id.* at 362.

¶ 32     Part RMA 1 provides: "The Association will pay on behalf of the Members [(City)] all sums which the Members [(City)] shall become legally obligated to pay as damages, defined as 'ultimate net loss', because of 'bodily injury' or 'property damage' to which this form applies; caused by an 'occurrence' within the 'coverage territory'." Part RMA L defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in 'bodily injury', 'property damage'[,] or other covered damages neither expected nor intended from the standpoint of the Members [(City)] involved[.]" The "loss of use" prong of the

property damage provision defines "property damage" as the "loss of use of tangible property which has not been physically injured or destroyed, provided such loss of use is caused by an 'occurrence' during the 'coverage period'[.]" The coverage grants do not define "accident" or "loss of use." While the coverage grants do not define "loss of use," part RMA 4 uses and defines the term "loss."

¶ 33        In its initial brief, the City does not address the argument the Association asserted in the trial court suggesting the terms "loss" and "loss of use" were not interchangeable. Instead, the City focuses its argument on whether the "loss of use" requires property to be injured or destroyed. As the Association points out, the City's argument misses the mark. The "loss of use" prong of the property damage provision specifically defines "property damage" as the "loss of use of tangible property *which has not been physically injured or destroyed*." (Emphasis added.)

¶ 34        The Association maintains, relying primarily on *Collin*, 26 Cal. Rptr. 2d at 408, and *Advanced Network, Inc.*, 119 Cal. Rptr. 3d at 20-24, the terms "loss" and "loss of use" are not interchangeable. The Association asserts, where an owner of property alleges only a permanent deprivation of that property, the owner has not suffered a "loss of use." In its reply brief, the City does not disagree with the holdings of *Collin* and *Advanced Network, Inc.* but rather only contends they are inapplicable to the present case because the plaintiffs have suffered only a temporary loss of their property.

¶ 35        In *Collin*, 26 Cal. Rptr. 2d at 408-09, the Second District of the California Court of Appeal was tasked with interpreting a "loss of use" provision of an insurance policy. The court held " '[l]oss of use' of property is different from 'loss' of property." *Id.* at 408. As an example, the court addressed the theft of an automobile: "The value of the 'loss of use' of the car

is the rental value of a substitute vehicle; the value of the 'loss' of the car is its replacement cost." *Id.* at 409. Giving effect to the limiting words of the contract, the court found no coverage existed under the "loss of use" provision of the insurance policy because the damages sought related only to the value of the property lost. *Id.*

¶ 36 In *Advanced Network, Inc.*, 119 Cal. Rptr. 3d at 23-26, the Fourth District of the California Court of Appeal interpreted a "loss of use" provision of an insurance policy. The court, following *Collin* and related cases adopting the holding of *Collin*, concluded the terms "loss of use" and "loss" were not interchangeable. *Id.* at 23-24. It found coverage for "loss of use" did not apply to an action in which the claimant sought only the replacement value of the property he or she lost. The court further found, while the "loss of use" provision of the insurance policy was not modified by the term " 'temporary,' " "the impermanent nature of 'loss of use' damages [was] implicit." *Id.* at 25.

¶ 37 We find the holdings of *Collin* and *Advanced Network, Inc.*, persuasive. At the core of these holdings, the courts merely follow those principles of contractual interpretation we previously addressed. That is, in construing a contract, we must give effect to the parties' intentions as expressed by the policy language as well as give effect to every contractual provision where possible. See *Valley Forge Insurance Co.*, 223 Ill. 2d at 362. The "loss of use" prong of the property damage provision defines "property damage" as the "loss *of use* of tangible property." (Emphasis added.) We must presume the use of the additional limiting language was intended to serve a purpose. *Id.* Reading the coverage grants as a whole, support for this presumption can be gleaned from the intentional use of the term "loss" rather than "loss of use" in part RMA 4. Under the plain and ordinary meaning of the language used in the coverage

grants as well as the persuasive authority provided, we hold coverage is provided under the "loss of use" prong of the property damage provision as applied to part RMA 1 only where the damages sought relate to the impermanent nature of the injury sustained. To hold otherwise would be to decline to give effect to the words "of use" in the term "loss of use."

¶ 38      We turn next to the allegations of the underlying complaint to determine whether the plaintiffs have alleged a "loss of use" of their property. The City contends the plaintiffs asserted they "suffered a 'loss of use' of their money on a temporary basis, not as a permanent 'loss of use.' " At the hearing on the Association's amended motion for summary judgment, the City further suggested the plaintiffs asserted they lost the "interest" on their money. The Association disagrees, maintaining the plaintiffs asserted they were permanently deprived of their money by paying a nonrefundable administration fee and sought only the return of the value of those payments in damages.

¶ 39      We must construe the underlying complaint liberally, resolving all doubts in favor of coverage for the City. See *Westfield Insurance Co.*, 2016 IL App (1st) 140862, ¶ 12. The plaintiffs alleged the City's ordinance unlawfully required them to pay a $500 administrative fee to obtain their impounded vehicles. It is undisputed the $500 administrative fee was nonrefundable. By paying the nonrefundable administrative fee, each plaintiff was permanently deprived of his or her $500. The plaintiffs sought "the return of all monies received by [the City] to date and to the time of trial in this cause via assessment of the [a]dministrative [f]ee." In their request for class certification, the plaintiffs specifically asserted their claims for the amount of $500 per person made individual litigation economically infeasible. We conclude the City is not entitled to coverage, as the plaintiffs have not alleged a "loss of use" as defined by the "loss of

use" prong of the property damage provision. See *Advanced Network, Inc.*, 190 Cal. App. 4th at 1064 (finding the insured was not entitled to coverage under the "loss of use" provision because the stolen money was irretrievable and the underlying action sought only the replacement value of the money). Because the City has failed to show the plaintiffs have alleged a claim for "loss of use" under the "loss of use" prong of the property damage provision, we need not address the related issue of whether the plaintiffs have alleged a loss of use of "tangible property" or whether an "occurrence" occurred. Summary judgment was properly granted in favor of the Association.

¶ 40    As a final matter, we note the Association argued the City forfeited multiple contentions of error by failing to provide the trial court with supporting authority. In support of its forfeiture arguments, the Association cited an order filed under Illinois Supreme Court Rule 23 (eff. July 1, 2011). Such an order is not precedential and may not be cited by any party except in the limited circumstances allowed under Rule 23(e)(1). Accordingly, as it related to whether the plaintiffs alleged a claim for "loss of use" under the "loss of use" prong of the property damage provision, we declined to consider the Association's forfeiture argument.

¶ 41                    III. CONCLUSION

¶ 42    We affirm the trial court's judgment.

¶ 43    Affirmed.