[No. D055632. Fourth Dist., Div. One. Dec. 10, 2010.]

ADVANCED NETWORK, INC., Plaintiff and Respondent, v.
PEERLESS INSURANCE COMPANY, Defendant and Appellant.

COUNSEL

Sheppard Mullin Richter & Hampton, Frank Falzetta, Brenda Bissett, Jennifer Hoffman; Berger Kahn and Dale A. Amato for Defendant and Appellant.

Law Office of Mark A. Ginella, Mark A. Ginella; Connors & Associates and G. Patrick Connors III for Plaintiff and Respondent.

OPINION

McCONNELL, P. J.—This is a dispute over insurance coverage under a commercial general liability (CGL) policy Peerless Insurance Company (Peerless) issued to Advanced Network, Inc. (ANI). On appeal, Peerless contends the court erred by finding an underlying action for the replacement of cash stolen by an ANI employee from one of its clients, a credit union, was an action for damages for the "loss of use" of property within the meaning of the policy. We agree with Peerless. " 'Loss of use' of property is different from 'loss' of property." (*Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 818 [26 Cal.Rptr.2d 391] (*Collin*).) As neither the allegations of the underlying complaint nor any extrinsic facts raised any coverage potential, Peerless had no duty of defense or indemnification. We reverse the judgment, which awarded ANI approximately $2 million in compensatory and punitive damages, and direct the court on remand to enter judgment for Peerless.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 1997 ANI contracted with Mission Federal Credit Union (Mission Federal) to service the cash distribution machines (CDM's) in its branch stores. An armored carrier would deliver cash to a Mission Federal branch,

and a single ANI employee would later enter the branch during nonbusiness hours with a key and an alarm code, access the safe, remove cash designated for the CDM's and replenish them.

In December 2000 ANI assigned former employee Jacob Johnson to service Mission Federal's CDM's. In October 2004 it was discovered that Johnson had stolen approximately $2 million in cash from Mission Federal, which he concealed by submitting false records. Mission Federal made a demand on its fidelity bond holder, Cumis Insurance Society, Inc. (Cumis), and after applying a deductible Cumis paid it $1,954,627.

In August 2005 Cumis sued ANI in the federal district court for equitable subrogation, breach of contract and negligence, and for respondeat superior liability for Johnson's torts (*Cumis Insurance Society, Inc. v. Advanced Network, Inc.*, case No. 05CV1566 DMS (BCM) (*Cumis* action)). Shortly thereafter, Johnson pleaded guilty in a federal criminal case to misappropriating more than $2 million from Mission Federal between December 2000 and October 7, 2004.

ANI had a CGL policy with Peerless, with per occurrence and aggregate limits of $1 million and $2 million, respectively. The policy covered third party "property damage" caused by an "occurrence" during the policy period. The policy defined "property damage" as (1) "Physical injury to tangible property, including all resulting loss of use of that property," and (2) "Loss of use of tangible property that is not physically injured." ANI also had a $250,000 crime policy with Chubb Group of Insurance Companies (Chubb), and a $3 million commercial umbrella policy with Golden Eagle Insurance (Golden Eagle).

Through its insurance broker, Marrs Maddocks & Associates (Marrs Maddocks), ANI tendered the defense of the *Cumis* action to Golden Eagle. A claims consultant for Golden Eagle and Peerless, Adam Woellert, handled the matter. Although the tender did not mention the Peerless CGL policy, Woellert considered it in determining whether ANI had any coverage. After reviewing the complaint allegations and confirming with ANI's attorney that there were no other material facts, Woellert determined the CGL policy provided no coverage. Peerless took the position there was no "property damage" within the meaning of the CGL policy because money is not considered to be tangible property, and the theft of money was not a covered "occurrence" because it was not accidental. Peerless sent ANI letters denying coverage on these grounds.

In late 2006 ANI agreed to pay $1 million to Cumis to settle its action. Of that amount, Chubb contributed its $250,000 crime policy limit.

In September 2007 ANI commenced this action against Peerless for breach of contract and breach of the implied duty of good faith and fair dealing.[1] The parties both moved for summary judgment or summary adjudication. In its December 5, 2008 tentative ruling, the court denied Peerless's motion. The court rejected Peerless's theories, explaining that cash is tangible property, and there was an "occurrence" because from the standpoint of ANI, its employee's theft of cash was unforeseen and unintended. The court also found that while there was no known injury or damage to the stolen cash, there was potential coverage under the "property damage" provision of the CGL policy because Mission Federal "did sustain a 'loss of use' of the bills." The tentative ruling granted ANI's motion for summary adjudication of Peerless's duty to provide ANI a defense in the *Cumis* action.

At the hearing on the same date, Peerless argued the "loss of use" prong of the property damage provision is inapplicable because the *Cumis* action was not for loss of use of stolen cash, and rather was for the replacement value of the cash. Peerless cited *Collin, supra*, 21 Cal.App.4th 787. After taking the matter under submission, on December 11 the court affirmed its tentative ruling. Peerless then paid ANI $50,638.72 for attorney fees it incurred in the *Cumis* action.

Trial was held in February and March 2009. The parties' January 29, 2009 joint trial readiness conference report states Peerless disputed that "the loss of cash money is 'property damage' as that term is defined by the Peerless . . . polic[y]." In its trial brief, Peerless again raised the *Collin* opinion and argued the theft or conversion of cash does not fall within the "loss of use" prong of the policy's property damage provision. On the first day of trial, February 24, the court rejected Peerless's "loss of use" argument.

Trial proceeded on the remaining coverage issue, whether a policy exclusion pertaining to damage to property in the care, custody and control of ANI applied. The court found the exclusion inapplicable, directed a verdict in favor of ANI on its breach of contract cause of action, and awarded it $750,000 in damages for Peerless's failure to indemnify it in the *Cumis* action. The court denied Peerless's motion for nonsuit on the issue of bad faith and allowed the matter to go to the jury. The jury found in ANI's favor and awarded it $2 million in punitive damages. The jury was also asked to determine whether ANI had any further contractual damage, and it awarded an additional $17,709.19 for attorney fees incurred in the *Cumis* action. Further, the court awarded ANI $170,675 in so-called "*Brandt* fees," which are attorney fees "incurred by the insured to obtain what it was owed under

---

[1] The complaint also included several causes of action ANI did not pursue at trial. Further, the complaint named Johnson, Golden Eagle and Marrs Maddocks as defendants, but they are not involved in this appeal.

the contract." (*Griffin Dewatering Corp. v. Northern Ins. Co. of New York* (2009) 176 Cal.App.4th 172, 211 [97 Cal.Rptr.3d 568]; see *Brandt v. Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796].) Judgment was entered on May 8, 2009.

Peerless moved for judgment notwithstanding the verdict (JNOV) or a new trial. The court denied the motion for JNOV and conditionally granted the motion for a new trial based on excessiveness of the punitive damage award, pending ANI's acceptance of a reduction of the award from $2 million to $1 million. ANI accepted the reduction and an amended judgment totaling $1,984,269.72 was entered on July 21, 2009. The court subsequently awarded ANI an additional $31,464.77 in attorney fees and costs.

## DISCUSSION

### I

#### *Applicable Insurance Principles*

██ " ' "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." ' " (*Stamm Theatres, Inc. v. Hartford Casualty Ins. Co.* (2001) 93 Cal.App.4th 531, 538 [113 Cal.Rptr.2d 300].) "To yield their meaning, the provisions of a policy must be considered in their full context. [Citations.] Where it is clear, the language must be read accordingly. [Citations.] Where it is not, it must be read in conformity with what the insurer believed the insured understood thereby at the time of formation [citations] and, if it remains problematic, in the sense that satisfie[d] the insured's objectively reasonable expectations [citations]." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 45 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

██ "Standard [CGL] policies provide . . . that the insurer has a duty to indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for any covered claim. They also provide that the insurer has a duty to defend the insured in any action brought against the insured seeking damages for any covered claim." (*Buss v. Superior Court, supra*, 16 Cal.4th at pp. 45–46, fn. omitted.)

An insurer's duty of indemnification requires a determination of actual coverage under the policy. (*Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.* (2007) 148 Cal.App.4th 976, 993 [56 Cal.Rptr.3d 279].) "The insured has the burden to bring the claim within the basic scope of coverage . . . ." (*Ray v. Valley Forge Ins. Co.* (1999) 77 Cal.App.4th 1039, 1044 [92 Cal.Rptr.2d 473].)

In contrast, " '[a] liability insurer owes a duty to defend its insured when the claim creates any *potential* for indemnity. [Citation.] The determination of whether the duty to defend arises is made by comparing the terms of the policy with the allegations of the complaint and any known extrinsic facts, and any doubt as to whether the facts create a duty to defend is resolved in favor of the insured.' " (*Pacific Indemnity Co. v. Bellefonte Ins. Co.* (2000) 80 Cal.App.4th 1226, 1231 [95 Cal.Rptr.2d 911], italics added.) " '[T]he insurer need not defend if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' " (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153], quoting *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276, fn. 15 [54 Cal.Rptr. 104, 419 P.2d 168], italics added by *Montrose* court.) "[T]he insurer must defend in some lawsuits where liability under the policy ultimately fails to materialize; this is one reason why it is often said that the duty to defend is broader than the duty to indemnify." (*Montrose*, at p. 299.)

■ "Breach of an insurer's duty to defend violates a contractual obligation and, where unreasonable, also violates the covenant of good faith and fair dealing, for which tort remedies are appropriate. [Citation.] Contractual damages are 'the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.' [Citations.] Tort damages are 'the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.' " (*Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 831 [61 Cal.Rptr.2d 909].)

The interpretation of an insurance policy is a question of law for our independent review. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619] (*Waller*).)

II

*"Loss of Use" of Tangible Property*

A

■ Peerless contends the court erred by finding coverage under the Peerless CGL policy on the ground the *Cumis* action was for the "loss of use" of the cash ANI's employee stole from Mission Federal. We agree. Peerless's CGL policy does not define "loss of use," but it is established in California that the term cannot reasonably be interpreted to include the permanent *loss* of property through conversion.

The leading case on the matter is *Collin, supra,* 21 Cal.App.4th 787, 816, in which the appellate court held the trial court erred by finding the conversion of furniture was property damage under the "loss of use" prong of the property damage coverage provision of a CGL policy. The trial court rejected the insurer's argument the "loss of use" provision applied only when deprivation of the property was "temporary," since the policy did not expressly use that qualifying term. (*Id.* at pp. 817–818.) The *Collin* court explained: " 'Loss of use' of property is different from 'loss' of property. To take a simple example, assume that an automobile is stolen from its owner. The value of the 'loss of use' of the car is the rental value of a substitute vehicle; the value of the 'loss' of the car is its replacement cost. The nature of 'loss of use' damages is described in California Jurisprudence Third as: 'The measure of damages for the loss of use of personal property may be determined with reference to the *rental value* of similar property which the plaintiff can hire for use *during the period when he is deprived of the use* of his own property.' " (*Collin, supra,* at p. 818, quoting 23 Cal.Jur.3d, Damages, § 69, pp. 129–130, italics added by *Collin* court.)

The *Collin* court added: "The [trial] court's error is understandable: the Collins did 'lose the use' of their property. What the court failed to appreciate is that the damages they recovered were not 'loss of use' damages but the value of the property itself. Had [the insurer] wished to insure 'loss of property,' its policy would have so provided." (*Collin, supra,* 21 Cal.App.4th at pp. 818–819; see 2 Witkin, Summary of Cal. Law (10th ed. 2005) Insurance, § 98, p. 154 [for purposes of insurance law, "conversion is not property damage, but rather the taking or deprivation of property"].)

Several opinions have adopted the holding of *Collin.* For instance, in *Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999 [71 Cal.Rptr.2d 882], a distributor (UniBasic) brought an underlying action for conversion or replevin against a computer software company (Dynamic), which was insured under a CGL policy. The complaint alleged that through false pretext the insured obtained computers owned by the UniBasic's customers. (*Id.* at pp. 1001–1002.) In the coverage action, the trial court held there was no potential for coverage under the "loss of use" prong of the property damage insuring provision. Citing *Collin, supra,* 21 Cal.App.4th 787, 816–819, the Court of Appeal affirmed the ruling. (*Dynamic, supra,* at p. 1005, fn. 4.)

In *Criticom Internat. Corp. v. Scottsdale Ins. Co.* (9th Cir. 2007) 228 Fed.Appx. 677, the insured under a CGL policy, an alarm installation company (Criticom), was sued by alarm system retailers for selling their equipment to another company (King). The court affirmed a summary judgment for the insurer on Criticom's action for indemnity and bad faith,

explaining that "although the alarm system retailers' complaints alleged that Criticom wrongfully sold the retailers' 'equipment' to King, they did not claim damages for *'loss of use'* of the equipment. Rather, their claim was for conversion, an action that California courts have distinguished from physical injury and loss of use." (*Id.* at p. 678, citing *Collin, supra,* 21 Cal.App.4th 787.)

In *Atmel Corp. v. St. Paul Fire & Marine Ins. Co.* (N.D.Cal. 2006) 430 F.Supp.2d 989, 991, a manufacturer of disk drives (Seagate) sued the insured (Atmel) for breach of contract and other counts, alleging " 'Atmel's chips were defective, and they caused Seagate's disk drives to fail.' " Further, Seagate alleged it " 'had sold millions of disk drives to customers manufactured with Atmel's defective chips,' " and as a result, it " 'had to address customers' complaints and concerns by repairing or replacing defective disk drives.' " (*Ibid.*) The court held there was no coverage under the "loss of use" prong of Atmel's CGL policy, citing *Collin, supra,* 21 Cal.App.4th 787, 818. (*Atmel, supra,* at p. 994.) The court explained, "Seagate's damages primarily consisted of costs associated with repairing and replacing the Atmel chips," such damages "were too attenuated from a 'loss of use,' and there must be a more direct connection between the damages claimed and the loss of use of the property in order to establish coverage." (*Id.* at pp. 994–995.)

*Maryland Casualty Co. v. Texas Commerce Bancshares, Inc.* (N.D.Tex. 1995) 878 F.Supp. 939, does not cite *Collin,* but the court there arrived at the same conclusion as the *Collin* court under facts similar to those of the instant case. In *Maryland Casualty,* the beneficiaries of a trust sought damages in the underlying action from a financial institution (TCB) after it allowed a nonbeneficiary without any right to access the trust account to withdraw funds. The court rejected TCB's argument the underlying action for "the converted bank account" was for the "loss of use" of the missing money. It held the insurer had no duty of defense or indemnification. (*Maryland Casualty, supra,* at p. 943; see *GATX Leasing Corp. v. National Union Fire Ins. Co.* (N.D.Ill., July 14, 1994, No. 94 C 431) 1994 U.S.Dist. Lexis 9890, p. *13 [" 'loss of use' is narrower than loss of property"; "[l]oss of use is intended to compensate for a temporary loss and thereby is determined by rental value" while "loss of property is intended to compensate for a permanent loss and is determined by replacement cost"], affirmed in *GATX Leasing Corp. v. National Union Fire Ins. Co.* (7th Cir. 1995) 64 F.3d 1112.)

We agree with the holding of *Collin* and related cases that the terms "loss of use" and "loss" are not interchangeable for insurance purposes. If we were to hold otherwise, we would have to ignore the words "of use" in the term "loss of use." "We must give significance to every word of a contract, when possible, and avoid an interpretation that renders a word surplusage."

(*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 49 [111 Cal.Rptr.3d 313].) Further, "[c]ourts do not engage in forced construction of insuring clauses to find coverage, nor will they strain to create an ambiguity where none exists." (*Ray v. Valley Forge Ins. Co., supra,* 77 Cal.App.4th at p. 1044.) ██ Coverage for "loss of use" does not apply to an underlying action in which the claimant seeks only the replacement value of converted property. While the "loss of use" provision in Peerless's CGL policy is not modified by the term "temporary," the impermanent nature of "loss of use" damages is implicit. Borrowing *Collin*'s stolen car example, the measure of damages of a stolen car cannot be its rental value ad infinitum on the ground there was a permanent "loss of use" of the property. Interpreting the term "loss of use" to include a permanent loss would lead to absurd results.

██ It is undisputed that the cash ANI's employee stole from Mission Federal was irretrievable, and the *Cumis* action was for the replacement value of the cash. The *Cumis* action did not seek any "loss of use" damages.[2] Because neither the underlying complaint nor any extrinsic facts showed the potential for coverage under Peerless's CGL policy, it had no duty of defense or indemnity toward ANI. Thus, the judgment against Peerless cannot stand.

B

1

ANI asserts *Collin* is inapplicable because it does not pertain to whether the allegations of the underlying complaint raised a potential for coverage under the policy, triggering the insurer's duty of defense. *Collin* was brought by judgment creditors of the insured under Insurance Code section 11580, subdivision (b)(2) (*Collin, supra,* 21 Cal.App.4th at p. 800), but the procedural posture of the case does not affect the applicability of the opinion's holding as to the "loss of use" provision to cases in which the duty of defense *is* at issue. Here, we were required to determine whether the allegations of the *Cumis* action or other information raised the potential for coverage under the Peerless CGL policy, and we have found against ANI on the issue. It is undisputed that Mission Federal's loss resulted from thefts by ANI's employee.

---

[2] ANI essentially argues we should treat the term "loss of use" as including an actual loss of cash since there is no rental value for cash. ANI itself, however, points out that rental value is only one measure of damages for the loss of use of property. (See, e.g., *Vicor Corp. v. Vigilant Ins. Co.* (D.Mass. 2009) 599 F.Supp.2d 83, 85.) Financial institutions are in the business of making money through the use of their money, and a temporary deprivation of a large amount of cash would presumably cause damages such as lost interest on loans (a possible equivalent of rental value) or lost profits on potential investments.

ANI's reliance on *Westport Ins. Corp. v. Cotten Schmidt* (N.D.Tex. 2009) 605 F.Supp.2d 796 (*Westport*), for the proposition that Peerless owed it a defense in the *Cumis* action is misplaced. ANI does not analyze *Westport*. In *Westport*, the policy at issue was a legal malpractice policy, and the issue was whether the insurer owed the insured attorneys a defense in an underlying action for conversion of equipment based on alleged improprieties in their pursuit of default judgments against nonclients, a writ of attachment and sale at auction. (*Westport, supra,* at p. 798.) In a declaratory relief action, the insurer sought a finding that pursuant to certain exclusions in the policy, and because the underlying action did not allege a "wrongful act" as defined in the policy, there was no coverage. (*Id.* at p. 799.)

The court held the insurer had a duty of defense. One of the exclusions (exclusion D) precluded coverage for " 'injury to, or destruction of tangible property or loss of use thereof.' " (*Westport, supra,* 605 F.Supp.2d at p. 808.) The attorneys argued the exclusion was "intended to prevent the malpractice policy from inadvertently extending coverage to property-damage claims such as are typically covered in a [CGL] policy." (*Ibid.*) Citing *Collin*, the court noted that "in interpreting such policies, courts distinguish between the outright loss or conversion of property and a temporary loss or a 'loss of use.' " (*Westport, supra,* at p. 808, citing *Collin, supra,* 21 Cal.App.4th 787, 817.) The court further explained: "[T]he difference between the policy in this case and [CGL] policies generally weighs in favor of concluding exclusion D does not apply. Cases interpreting 'loss of use' in commercial liability policies do so in the context of evaluating whether a claim is covered in the first instance. In that context, policy terms are construed broadly in favor of coverage. [Citation.] Despite this rule of construction favoring the insured, where insureds have argued that 'loss of use' includes coverage for claims based on the taking of property, such as conversion, courts have denied coverage. [Citations.] [¶] In the current case, the Court is faced with interpreting 'loss of use' in the context of an exclusion. An insurance policy's exclusions are construed against the insurer in favor of coverage. [Citation.] The Court concludes that if 'loss of use' does not include conversion-type claims when construed favorably to the insured, *a fortiori*, the phrase cannot be taken to exclude coverage for conversion type claims when being construed against the insurer." (*Westport, supra,* at p. 809.)

The *Westport* court also found inapplicable an exclusion for any loss because of " 'conversion, misappropriation or commingling of funds.' " (*Westport, supra,* 605 F.Supp.2d at p. 809.) It determined the exclusion applied to the conversion of funds, but not to the conversion of other types of property. (*Id.* at pp. 809–810.) *Westport* does not suggest Peerless owed ANI a defense. It is factually distinguishable, and in any event, it cites *Collin* favorably and undercuts ANI's position.

2

We are also unpersuaded by ANI's contention that even if the *Cumis* action did not claim any "loss of use" within the meaning of the CGL policy, Peerless is equitably estopped from denying coverage on that ground. Peerless always denied coverage on the ground there was no covered "property damage" within the meaning of the CGL policy. To any extent Peerless's denial letters should have expressly mentioned the "loss of use" prong of the "property damage" definition, the estoppel doctrine is inapplicable.

 " ' "The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture . . . ." ' " (*Aetna Casualty & Surety Co. v. Richmond* (1977) 76 Cal.App.3d 645, 653 [143 Cal.Rptr. 75].) " '[I]t is the general and quite well settled rule of law that the principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained.' " (*Id.* at pp. 652–653; see *Miller v. Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 755 [161 Cal.Rptr. 322] ["Estoppel cannot be used to create coverage under an insurance policy where such coverage did not originally exist."]; *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009) 175 Cal.App.4th 64, 77 [96 Cal.Rptr.3d 316] ["Supervalu is asserting estoppel to expand coverage under the policies, which is impermissible, rather than to simply avoid a forfeiture of benefits."].) "[T]here is a definite distinction between the waiver of a right to declare a forfeiture, to cancel or to rescind based upon some breach of a condition of the policy on the one hand and the extension of the coverage provided by the policy on the other." (*Insurance Co. of North America v. Atlantic National Ins. Co.* (4th Cir. 1964) 329 F.2d 769, 775.)[3]

ANI's reliance on *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260 [84 Cal.Rptr.2d 552], is misplaced. In *Spray*, the court held summary judgment was improper because the insured raised a triable issue of fact as to whether estoppel applied, specifically whether it detrimentally relied on the insurer's failure to inform it of the policy's 12-month period within which a claim must be made. A regulation imposed on the insurer an affirmative duty to inform the insured of the limitation period. (*Id.* at p. 1269.) Through its ruling, the court sought to "help to

---

[3] An exception to the rule is that " 'the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds.' " (*Miller v. Elite Ins. Co., supra*, 100 Cal.App.3d at p. 755.) That is not the scenario here.

insure that valid claims will not be lost by an unusually short limitations period." (*Id.* at p. 1274.) *Spray* pertains to a condition of the policy rather than a coverage provision. Here, ANI tries to create coverage through estoppel.[4]

ANI also relies on *Waller, supra*, 11 Cal.4th 1, which rejects the notion an insurer waives coverage defenses not raised in its denial letter. The opinion explains: "California courts have applied the general rule that waiver requires the insurer to intentionally relinquish its right to deny coverage and that a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial." (*Id.* at p. 31.)

The insureds in *Waller* also argued the insurer was equitably estopped from raising a coverage defense. The insurer initially denied coverage on the ground the underlying complaint was "nothing more than a 'shareholder dispute' based on 'intentional acts.' " (*Waller, supra*, 11 Cal.4th at p. 34.) The trial court ruled the insurer wrongfully refused to defend, and on appeal the insurer argued for the first time that it had no duty to defend because its CGL policy did not apply to claims for "economic loss." (*Id.* at p. 23.) The court rejected the estoppel argument because the insureds showed no detrimental reliance on the insurer's stated ground for denial. (*Waller, supra*, 11 Cal.4th at p. 34.)[5] The court explained the "plaintiffs' alleged detrimental reliance on [the insurer's] initial denial letter could not give rise to a claim for estoppel because plaintiffs never *reasonably* believed, nor could they *reasonably* believe, that the . . . policy provided a potential for coverage for [the underlying] lawsuit." (*Waller, supra*, 11 Cal.4th at p. 35, italics added.) *Waller* does not address whether coverage may be established through estoppel.

Even if that were arguably the case, however, ANI has not shown any detrimental reliance on Peerless's stated reasons for denial. ANI asserts it relied on Peerless's conduct by accepting a reduced settlement amount, $98,000,

---

[4] ANI's reliance on *Chase v. Blue Cross of California* (1996) 42 Cal.App.4th 1142 [50 Cal.Rptr.2d 178], in support of its cursory argument Peerless *forfeited* the "loss of use" coverage defense, is also misplaced. *Chase* concerns an insurance policy's arbitration clause. The opinion acknowledges that "[f]orfeiture of a contractual right is not favored in the law," but an insurer may forfeit rights under the policy, such as arbitration rights, if the insurer engaged in "bad faith tactics designed to mislead the insured." (*Id.* at p. 1157.) Again, this case concerns the claimed expansion of coverage rather than the forfeiture of a right under the policy.

[5] "A valid claim of equitable estoppel consists of the following elements: (a) a representation or concealment of material facts (b) made with knowledge, actual or virtual, of the facts (c) to a party ignorant, actually and permissibly, of the truth (d) with the intention, actual or virtual, that the ignorant party act on it, and (e) that party was induced to act on it." (13 Witkin, Summary of Cal. Law, *supra*, Equity, § 191, pp. 527–528.)

from its insurance broker, Marrs Maddocks. ANI's attorney, Mark Ginella, submitted a declaration that states ANI's claim against Marrs Maddocks was based on its failure to secure adequate insurance coverage for employee theft from customers. ANI reasoned that if the court found Peerless's CGL policy provided no coverage for theft, Marrs Maddocks did not protect ANI's interests.

Ginella's declaration acknowledges that at the December 5, 2008 hearing on the summary adjudication motions, Peerless orally raised the "loss of use" coverage defense. In support, Peerless cited *Collin, supra*, 21 Cal.App.4th 787. In its December 11 ruling, the court rejected Peerless's stated coverage defenses and determined the *Cumis* action raised a potential for coverage under the "loss of use" provision of the policy. On December 31, Peerless filed a petition for writ of mandate in this court to challenge the court's ruling on the "loss of use" issue.

On January 29, 2009, the parties signed a joint trial readiness report, which states Peerless *disputed* that "the loss of cash money is 'property damage' as that term is defined by the Peerless . . . polic[y]." Ginella signed the document on ANI's behalf. Ginella's declaration states that on January 30, 2009, ANI agreed in an e-mail to the $98,000 settlement with Marrs Maddocks.

Ginella's declaration establishes that in settling its claim against Marrs Maddocks for a reduced amount, ANI did not rely on Peerless's conduct. Rather, ANI relied on the *court's* erroneous ruling of December 11, 2008, and presumably also on Ginella's settlement recommendation. The declaration states, *"Based on the Court's ruling,* counsel for Marrs Maddocks and I both recognized that my theories of liability as against Marrs Maddocks, for securing inadequate coverage had been greatly reduced." (Italics added.) The conduct of others does not estop Peerless from raising a valid coverage defense.

 Further, "[i]n general, the law 'particularly' disfavors estoppels 'where the party attempting to raise the estoppel is represented by an attorney at law.' [Citation.] For purposes of analyzing estoppel claims, attorneys are 'charged with knowledge of the law in California.' " (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1316 [104 Cal.Rptr.3d 195, 223 P.3d 57]; see *Kunstman v. Mirizzi* (1965) 234 Cal.App.2d 753, 757 [44 Cal.Rptr. 707]; *Tubbs v. Southern Cal. Rapid Transit Dist.* (1967) 67 Cal.2d 671, 679 [63 Cal.Rptr. 377, 433 P.2d 169].) Ginella had actual knowledge of the *Collin* opinion well before ANI agreed to settle with Marrs Maddocks.

## DISPOSITION

The judgment is reversed, and the trial court is directed on remand to enter judgment for Peerless. Peerless is entitled to costs on appeal.

Huffman, J., and Nares, J., concurred.

A petition for a rehearing was denied January 3, 2011, and respondent's petition for review by the Supreme Court was denied March 16, 2011, S189881.