Filed 4/15/15  Diamond Blue Enterprises v. Continental Ins. CA2/8
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DIAMOND BLUE ENTERPRISES, LLC et al., | B254256 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC488022) |
| v. | |
| CONTINENTAL INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Richard Fruin, Judge.  Affirmed.

Franceschi Law Corporation and Ernest J. Franceschi, Jr., for Plaintiffs and Appellants.

Elenius Frost & Walsh and Brian W. Walsh for Defendant and Respondent Continental Insurance Company.

Charlston, Revich & Wollitz, Howard Wollitz and Goli Akhavan for Defendant and Respondent Gemini Insurance Company.

* * * * * *

We affirm the entry of summary judgments in favor of Continental Insurance Company (Continental) and Gemini Insurance Company (Gemini). Appellants Diamond Blue Enterprises, LLC (Diamond) and Tyrone and Don Byrd demonstrate no triable issue of material fact.

## FACTS AND PROCEDURE

According to the first amended complaint, appellant (Diamond) is a limited liability company. Also according to the first amended complaint, appellant Tyrone Byrd was a member of Diamond and appellant Don Byrd was Diamond's managing member. Tyrone Byrd represented to Gemini and represented in a declaration in the trial court that he was the sole member and president of Diamond. Diamond's business included repairing and storing boats.

In April 2007, Robert and Linda Whitmarsh purchased a boat, which they financed through Bank of America. They later conveyed their interest in the boat to their family trust. After the Whitmarshes defaulted on their loan with Bank of America, the Whitmarshes gave possession of the boat to Diamond for repairs. Eventually, Diamond held a lien sale and took title to the boat.

In October 2007, Gemini issued a general liability policy to Diamond. According to Tyrone Byrd, Diamond paid the premium for the policy but did not receive a copy of the policy from its insurance broker. In October 2009, Continental issued a yacht policy to Diamond, expressly identifying Diamond as the insured.

On July 24, 2009, Bank of America sued the Whitmarshes and their family trust for breach of written agreement, claim and delivery, conversion, and goods sold and delivered. The lawsuit named Tyrone Byrd doing business as Best Storage as defendant in the causes of action for claim and delivery and conversion. The lawsuit alleged the Whitmarshes failed to pay the principal of $135,040 and failed to pay interest according to a security agreement with the bank regarding the boat. The complaint alleged that the boat was in the possession of Tyrone Byrd. In the claim and delivery cause of action, the bank alleged that Tyrone Byrd refused to return the boat and wrongfully retained it. In

2

the conversion cause of action, the bank alleged that Tyrone wrongfully and unlawfully converted the property.

In August 2010, the Whitmarshes cross-complained in the Bank of America lawsuit alleging causes of action against Diamond, and Tyrone and Don Byrd. Among other allegations, the cross-complaint alleged that the radar on the boat was damaged when Tyrone Byrd moved the boat. The bulk of the remaining allegations described Tyrone Byrd's alleged concealment of the boat, and the alleged improper lien sale. In November 2010, Tyrone Byrd tendered the cross-complaint to Gemini through Diamond's insurance broker Brilliant Insurance Services.

After receiving information that Tyrone Byrd damaged the boat, Gemini agreed to defend the cross-complaint under a reservation of rights. Gemini did not pay defense costs incurred in defending the cross-complaint *prior* to the tender.

In February 2011, Tyrone Byrd tendered the Bank of America complaint to Gemini. Gemini refused to defend against the complaint.

During the pendency of the litigation, Bank of America repossessed the boat. Diamond demanded compensation from Continental for loss incurred when Bank of America repossessed the boat. On October 18, 2010, Continental demanded Diamond undergo an examination under oath. Diamond refused to undergo an examination under oath. Its attorney or Don Byrd indicated they would "answer any questions in writing that are relevant and necessary to process this claim."

On November 8, 2010, November 22, 2010, December 20, 2010, January 14, 2011, March 7, 2011, April 14, 2011, April 26, 2011, May 9, 2011, and July 12, 2011, Continental again requested Diamond submit to an examination under oath. Don Byrd responded that he was not a principal, officer, or shareholder of Diamond but would answer questions in writing.

Continental eventually denied Diamond's claim because Diamond refused to submit to an examination under oath.

Diamond and Tyrone and Don Byrd sued Gemini and Continental, alleging causes of action for breach of contract and breach of the implied covenant of good faith and fair

3

dealing.[1]  Following motions for summary judgment, the trial court awarded judgment in favor of both insurers.

## DISCUSSION

"""[S]ummary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. "' [Citation.]  A moving defendant can meet its initial burden by presenting evidence showing plaintiffs' causes of action have no merit or are precluded by an affirmative defense.  [Citations.]  If the defendant makes its initial showing, the burden shifts to plaintiffs to show a triable issue of material fact exists.  [Citations.]  We review the trial court's ruling de novo [citation], construing 'the evidence in the light [most] favorable to the opposition to the motion, and liberally constru[ing] the opposition's evidence, while strictly scrutinizing the successful party's evidence and resolving any evidentiary ambiguities in the opposition's favor' [citation].  We will affirm a summary judgment if it is correct on any ground, as we review the judgment, not its rationale." (*Overstock.Com, Inc. v. Goldman Sachs & Co.* (2014) 231 Cal.App.4th 513, 528, fn. 10.)

Code of Civil Procedure section 437c, subdivision (c) states:  "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment may not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact."

---

[1]    The complaint also alleged causes of action for legal malpractice and breach of fiduciary duty against persons who are not parties on appeal.

4

## 1. *Continental Insurance*

In granting Continental's motion for summary judgment, the trial court concluded that because Diamond failed to submit to an examination under oath it forfeited any benefits under the policy. On appeal, Diamond argues (1) there was no requirement the examination under oath be conducted orally and (2) neither Tyrone nor Don Byrd are insured persons for purposes of an examination under oath. Appellants' arguments are not persuasive.

### A. *Continental Policy*

The policy issued by Continental provided in pertinent part: "Following a loss you must: [¶] . . . [¶] . . . [c]ooperate with us in the investigation, defense, or settlement of any loss, and agree to be examined under oath if we so request."

Under the policy, "insured" is defined as "any insured named on the Declarations Page, the spouse of any insured named on the Declarations Page, a family member of any insured named on the Declarations Page, an officer, director, partner or shareholder of any insured named on the Declarations Page, the spouse of any officer, director, partner or shareholder of any insured named on the Declarations Page, or any other person or organization using the insured boat with your permission and without compensation. If the Named Insured(s) on the Declarations Page is not an individual or individuals, then 'you', 'your', 'insured', and 'insured person' is defined as the legal entity named on the Declarations Page . . . ."

### B. *Diamond Failed to Submit to the Required Examination Under Oath*

"'The right to require the insured to submit to an examination under oath concerning all proper subjects of inquiry is reasonable as a matter of law.'" (*California Fair Plan Assn. v. Superior Court* (2004) 115 Cal.App.4th 158, 162.) Diamond's argument that its attorney and Don Byrd's willingness to answer questions in writing was sufficient to satisfy the examination under oath requirement lacks merit.

Appellants' proposal to answer questions in writing is not the same as answering questions in an examination under oath, which is akin to cross-examination. "The purpose of the examination under oath is to enable the insurer to obtain the information

5

necessary to process the claim: "'"As the facts with respect to the amount and circumstances of a loss are almost entirely within the sole knowledge of the insured, . . . it is necessary that it [the insurer] have some means of cross-examining, as it were, upon the written statement and proofs of the insured, for the purpose of getting at the exact facts before paying the sum claimed of it. Such considerations justify the provision . . . requiring the insured as often as demanded to submit to an examination under oath touching all matters material to the adjustment of the loss, and provisions of that character are held to be reasonable and valid."' [Citation.] An insured's failure to comply with the policy requirement for examination under oath deprives the insurer of a means for obtaining information necessary to process the claim." (*Brizuela v. CalFarm Ins. Co.* (2004) 116 Cal.App.4th 578, 591-592.)

Here Continental was deprived of the opportunity of cross-examining the insured's statements. Appellants' argument that they agreed to answer written questions is irrelevant because under the terms of the policy they were required to submit to an examination under oath—not simply respond to written questions.**2**

*C. Diamond Was the Insured and Was Required Through Its Members to Submit to an Examination Under Oath*

Appellants' argument that neither Tyrone nor Don Byrd were required to submit to an examination under oath also lacks merit. Diamond was the insured as it was identified as the insured on the declaration page. As a limited liability company Diamond could "speak" only through its members. "'"A limited liability company is a hybrid business entity formed under the Corporations Code and consisting of at least two 'members' [citation] who own membership interests [citation]. The company has a legal existence separate from its members. Its form provides members with limited liability to the same extent enjoyed by corporate shareholders [citation], but permits the members to actively participate in the management and control of the company [citation]."'" (*Denevi v. LGCC* (2004) 121 Cal.App.4th 1211, 1214, fn. 1.) Because Diamond could "speak" only

---

**2** Appellants only volunteered to answer questions in writing but not under oath.

6

through its members—who managed the company—at least one of its members had to submit to the examination.

According to the first amended complaint, Tyrone Byrd was a member of Diamond and Don Byrd was its managing member. As the trial court found, their refusal to submit to an examination under oath caused Diamond to forfeit any benefits of the insurance policy. (*California Fair Plan Assn. v. Superior Court, supra*, 115 Cal.App.4th at pt. 166.) Appellants cite no authority supporting their claim that neither Tyrone nor Don Byrd was required to submit to an examination under oath because the insured was a company not a corporation.

## 2. *Gemini*

Appellants challenge the entry of summary judgment in favor of Gemini, arguing that Tyrone Byrd's declaration raised a triable issue of material fact as to the voluntariness of their pre-tender payments. Appellants also argue that the definition or property damage was ambiguous requiring Gemini to defend against the Bank of America complaint. We first describe the relevant policy provisions and then consider appellants' arguments.

### A. *Gemini Insurance Policy*

Gemini issued Diamond a commercial general liability policy for the period October 10, 2007, through October 10, 2008. The policy provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy defined property damage as: "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or [¶] . . . loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." The term "occurrence" was defined as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The insurance policy provides: "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent."

### B. *Gemini Was Not Required to Pay Pre-tender Costs on the Whitmarshes' Cross-complaint*

Appellants concede that they defended against the Bank of America lawsuit for over a year prior to submitting a claim with Gemini. With respect to the cross-complaint, they claim to have incurred over $383,805 in defense costs prior to tendering the claim to Gemini. Appellants argue the payments were made "involuntarily" because Tyrone Byrd was not aware of the Gemini policy until he asked his wife to ask his insurance broker for a copy of it. He asked his wife after a deposition in the underlying Bank of America litigation because the attorney questioning him inquired about insurance. Tyrone Byrd learned that he did not receive a copy of the policy because he did not pay the service charge for it.

The question of voluntariness may be decided as a question of law on undisputed facts. (*Tradewinds Escrow, Inc. v. Truck Ins. Exchange* (2002) 97 Cal.App.4th 704, 710.) Payments may be "involuntary," removing them from the prohibition against a voluntary payment if the payments are out of the insured's control. (*Jamestown Builders, Inc. v. General Star Indemnity Co.* (1999) 77 Cal.App.4th 341, 348 (*Jamestown*).) Payments may be out of the insured's control when the insured is unaware of the identity of the insurer or the contents of a policy. (*Ibid*.) For example, an appellate court held it was error to sustain a demurrer where an insured waited four or five months before tendering a defense while they searched for insurance policies. (*Fiorito v. Superior Court* (1990) 226 Cal.App.3d 433, 436 (*Fiorito*).) The insured engaged counsel to file and answer and cross-complaint within statutory time periods. (*Id*. at p. 436.) *Fiorito* "turned largely on the possibility that the defense of the underlying action had to begin 'before the insured had time to identify the insurer and then tender the defense.'" (*Faust v. The Travelers* (9th Cir. 1995) 55 F.3d 471, 473.) In *Shell Oil Co. v. National Union*

8

*Fire Ins. Co.* (1996) 44 Cal.App.4th 1633, 1648-1649, the court followed *Fiorito* and found pre-tender payments involuntary.

Here, citing *Jamestown* and *Fiorito*, appellants argue its payments were involuntary because it did not know the identity of the insurer. But, in contrast to *Fiorito* a case decided on demurrer, for purposes of summary judgment Diamond was required to present evidence that it had to incur costs before it could timely identify its insurer. Tyrone's testimony that he did not ask his wife to investigate the possibility of insurance until deposed about insurance does not excuse his obligation under the policy because it fails to show he timely investigated insurance and incurred costs before he could identify the insurer. There was no evidence that the costs incurred were necessary to protect Diamond's legal interest or respond to legal process. There was no evidence the delay was out of appellants' control because appellants could have investigated insurance as soon as the complaint was served upon them. In short, the evidence that Tyrone testified that he did not search for a policy until questioned in a deposition in the Bank of America litigation is insufficient to raise a triable issue of material fact to support an inference that the payments were out of Diamond's control. (*Jamestown, supra*, 77 Cal.App.4th at p. 348; cf. *Insua v. Scottsdale Ins. Co.* (2002) 104 Cal.App.4th 737, 747.)

When "the insured has failed to demand a defense and relinquish control over the case, it cannot expect the quid pro quo of pre-tender voluntary payments, expenses, or other obligations incurred by the insured pre-tender without the insurer's consent." (*Tradewinds Escrow, Inc. v. Truck Ins. Exchange, supra*, 97 Cal.App.4th at p. 710.) The trial court properly concluded as a matter of law Gemini was not required to pay *pre-tender* defense costs on the cross-complaint in the Bank of America litigation.

### C. Costs of Defense in Bank of America Complaint

Finally, we turn to whether appellants raised a triable issue of material fact to support the inference that Gemini was required to provide a defense against the Bank of America complaint. "An insurer owes a broad duty to defend against claims that create a potential for indemnity under the insurance policy. [Citation.] An insurer must defend against a suit even "'where the evidence suggests, but does not conclusively establish,

9

that the loss is not covered.'"'" (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 287.) "'Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. [Citation.] But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered.' [Citation.] This includes all facts, both disputed and undisputed, that the insurer knows or '"becomes aware of"' from any source [citation] 'if not "at the inception of the third party lawsuit," then "at the time of tender."' [Citation.] 'Moreover, that the precise causes of action pled by the third party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.' [Citation.] Thus, '[i]f any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage.' [Citation.] In general, doubt as to whether an insurer owes a duty to defend 'must be resolved in favor of the insured.'" (*Ibid.*)

The trial court found that there was no potential for coverage in the Bank of America complaint under the language of the Gemini policy. We agree. Appellants identify no construction of the policy that potentially could have brought Bank of America's claims within the coverage provision of the policy.

Appellants argue that the claim was covered "because it [(Bank of America)] sought 'loss of use damages.'" (Boldface and capitalization omitted.) Appellants' argument is foreclosed by well established case law. In *Advanced Network, Inc. v. Peerless Ins. Co.* (2010) 190 Cal.App.4th 1054, the court held that "'loss of use' and 'loss' are not interchangeable for insurance purposes." (*Id.* at p. 1063.) "Coverage for 'loss of use' does not apply to an underlying action in which the claimant seeks only the replacement value of converted property." (*Id.* at p. 1064.) The court explained: "the measure of damages of a stolen car cannot be its rental value ad infinitum on the ground there was a permanent 'loss of use' of the property. Interpreting the term 'loss of use' to

10

include a permanent loss would lead to absurd results." (*Ibid*.) Similarly, in *Collin v. American Empire Ins. Co*. (1994) 21 Cal.App.4th 787, 812, 817, the court held that a conversion cannot occur accidentally and does not constitute "property damage." The court emphasized that "'[l]oss of use' of property is different from 'loss' of property." (*Id*. at p. 818.) These cases illustrate that because Bank of America sought damages for conversion and wrongful possession it did not seek "loss of use" damages.

To avoid this result appellants attempt to characterize the Bank of America complaint as seeking recovery for the temporary detention of the boat. Undermining this argument is the undisputed fact that the Bank of America lawsuit concerned appellants' unlawful conversion of the boat.[3] No fact in appellants' "responding separate statement" supported the inference that Bank of America was seeking a loss for a temporary detention. Moreover, appellants identify no language in the Bank of America complaint which supported that assertion. Bank of America alleged that appellants unlawfully converted the boat and refused to return it to Bank of America. Appellants' argument that the lawsuit was for temporary detention is not supported by any evidence and therefore fails to raise a triable issue of material fact to defeat summary judgment.

Next appellants appear to argue that, because the Gemini policy ambiguously defines property damage, the allegations in the Bank of America complaint were potentially covered. As claimed support appellants quote extensively from purported deposition testimony, but they cite only to their papers in the trial court. The interpretation of an insurance policy is a question of law (*Hartford Casualty Ins. Co. v.*

_____

[3] The following facts were undisputed: (1) "In the claim and delivery cause of action, Bank of America alleged the boat was in the possession of Tyrone Byrd, that Bank of America was 'entitled to immediate possession of the property,' that defendants failed and refused to return the property which is 'wrongfully retained' by defendants, and by virtue of defendants' 'wrongful possession' Bank of America demanded 'immediate possession.'" (2) "In the conversion cause of action, Bank of America alleged it was the owner of the collateral under the Agreement, and that defendants 'wrongfully and unlawfully converted said property to their own use by refusing to pay or deliver said property.'"

11

*Swift Distribution, Inc., supra*, 59 Cal.4th at p. 288), and as explained the cases uniformly reject appellant's theory that a conversion may constitute a "loss of use." Even assuming appellants could show a deponent disagreed with the uniform case law, we would follow the law not the deponent's interpretation. Moreover, appellants fail to show that any fact in their separate statement support their theory that the language of the policy is ambiguous.[4]

Appellants further argue that Gemini's willingness to settle the cross-complaint indicated that they should also have defended against the complaint. But the allegations in the complaint and cross-complaint were not the same. Most importantly the undisputed facts indicate that Gemini agreed to defend the cross-complaint after receiving information that Tyrone Byrd was responsible for the damage to the boat. "Based on the new factual information presented by Tyrone Byrd, Gemini reconsidered its disclaimer of the Whitmarsh cross-complaint. With a letter dated January 7, 2011, Gemini agreed to defend . . . against the Whitmarsh cross-complaint under a reservation of rights." There was no similar allegation of damage to the boat in the complaint, explaining why Gemini agreed to defend one and not the other.

---

[4]     The trial court also concluded that the allegations in the Bank of America complaint did not constitute an "occurrence." "Occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Appellants offer no theory as to how the allegations in the complaint or extrinsic facts suggest that the lien sale and assuming title to the boat and refusing to give possession to Bank of America was accidental.

12

## DISPOSITION

The judgments are affirmed.  Respondents are entitled to costs on appeal.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

13