Filed 12/2/14  Yu v. Interstate Fire and Casualty Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| BANN-SHIANG LIZA YU, | |
| Plaintiff and Appellant, | G048813 |
| v. | (Super. Ct. No. 30-2009-00255065) |
| INTERSTATE FIRE AND CASUALTY COMPANY et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Affirmed.

Mohammed K. Ghods and William A. Stahr for Plaintiff and Appellant.

Hager & Dowling, John V. Hager and Sean D. Cooney for Defendant and Respondent Interstate Fire and Casualty Company.

Selman Breitman, Gregory J. Newman and Donald W. Montgomery for Defendant and Respondent Arch Specialty Insurance Company.

Plaintiff and appellant Bann-Shiang Liza Yu appeals from a judgment in favor of defendants and respondents Interstate Fire and Casualty Company (Interstate) and Arch Specialty Insurance Company (Arch)[1] (collectively defendants) in an insurance bad faith action. After a bench trial, the court ruled, based on the provisions of their respective policies, neither defendant had a duty to defend and entered judgment in their favor.

On appeal, plaintiff argues that because some property damage potentially occurred during the terms of the policies, they were required to defend their insured. As to Arch, she further maintains it did not timely deny coverage and thus is estopped from doing so. Plaintiff, suing as an assignee of rights under these policies, also argues the court erred in not finding the assignments valid.

We conclude none of the policies at issue provided coverage. This moots any argument as to the validity of the assignments. Finally, Arch is not estopped from denying coverage based on when it notified its insured. Thus, we affirm the judgment.

**FACTS AND PROCEDURAL HISTORY**

*1. The Construction Project*

Plaintiff contracted with ATMI Design Build (ATMI) to act as the general contractor to construct a Candlewood Suites Hotel (Project). In February 2002 ATMI entered into a subcontract with Frank Garcia, doing business as Frank Garcia Plumbing (Garcia), to install the plumbing for the Project. Garcia was the president of Frank Garcia Plumbing, Inc. (Garcia Plumbing; collectively the Garcias). Garcia Plumbing allegedly performed the work under the Garcia subcontract.

Plumbing defects arose during construction and continued even after Garcia Plumbing finished working in about late January 2004. In February and March 2004

---

[1] A third insurance company, National Union Fire Insurance Company of Pittsburgh, PA was also a party to the action and prevailed. Plaintiff's appeal as to that company was dismissed.

2

counsel for plaintiff gave written notice to the Garcias they had caused a water line to break and resulting in "two major floods" and further that toilets did not work. This caused both damage to the Project and work stoppage. In another March letter, counsel explained there were unresolved plumbing problems and advised plaintiff would be filing suit for construction defects, property damage, and abandonment of the project.

The Notice of Completion for the Project was recorded April 15, 2004 and the Notice of Occupancy was issued on April 16, 2004.

*2. Plaintiff's Suit Against the Contractors*

In October 2004 plaintiff sued ATMI and several contractors, including the Garcias, alleging the Garcias "failed to perform their duties properly and negligently installed the plumbing system for the Project." It further alleged the Garcias caused "additional damages when the piping system it had installed failed." (Underlying Action.) The complaint was amended in April 2005, November 2005, March 2006, and finally the fourth amended complaint in the Underlying Action filed on June 2006 became the operative complaint.

*3. Arch's Insurance Policy*

In May 2005, Arch issued its commercial general liability policy to Garcia Plumbing, effective through May 5, 2006 (Arch Policy). Coverage under the Arch Policy provided:

"a. We will pay those sums that an insured becomes legally obligated to pay as tort damages for . . . property damage to which this insurance applies. We have the right and duty to defend you . . . against any suit seeking tort damages provided that no other insurance affording a defense against such a suit is available to you. Our duty to defend you is further limited as provided below or in the Section of the policy entitled 'EXCLUSIONS: COVERAGES A AND B.' Except as otherwise provided in this policy, we have no duty to defend any other insured. We will have no duty to defend any

3

insured against any suit seeking damages for . . . property damage to which this insurance does not apply. . . .

"b. This insurance applies to . . . property damage only if:

"[¶] . . . [¶]

"(2) The . . . property damage is caused by an occurrence which takes place during the policy period whether or not such occurrence is known to any insured; and

"(3) The . . . property damage resulting from such occurrence first takes place during the policy period.

"(c) All . . . property damage arising from an occurrence shall be deemed to first take place at the time of the first such . . . property damage, regardless of the date of manifestation of such . . . property damage, even though the occurrence giving rise to such damage may be continuous or repeated exposure to the same generally harmful conditions, and even though the nature, type or extent of such . . . property damage may be continuous, progressive, cumulative, changing or evolving. If the date of the first . . . property damage cannot be determined, then the date of the first damage . . . shall be deemed to be the earliest date on which the process which led to the . . . damage began.

"[¶] . . . [¶]

"(e) Our duty to defend you is further limited as follows:

"(1) We shall have no duty to defend any suit in which it is alleged or claimed, in whole or in part, that any . . . property damage is continuous or progressive in nature or results from continuous or repeated exposure to a condition, unless the suit specifically alleges that all of the . . . property damage for which damages are sought first occurred during the policy period or during a period during which we proved continuous coverage under this or any other policy issued by us.

4

"(2)  We shall have no duty to defend any suit filed before the policy period begins, even though you were not a party to such suit at the time it was filed.

"(3)  Where a suit is based in whole or in part upon . . . property damage, liability for which is excluded by Exclusions . . . AA . . . , we shall have the right, but not the obligation, to defend such suit.  When we do elect to defend you in such suit, we shall reimburse you for the reasonable attorneys' fees and litigation expenses incurred by you, in accordance with paragraph 15 of SECTION IV, COMMERCIAL GENERAL LIABILITY CONDITIONS."

An additional provision in the Arch Policy stated:

"15.  REIMBURSEMENT OF DEFENSE COSTS WHERE WE DO NOT ELECT TO DEFEND

"Where, pursuant to paragraph e(3) of the Insuring Agreement, we have the right, but not the obligation[,] to defend a suit, and we do not elect to defend such suit, at the conclusion or resolution of the suit we shall reimburse you for your reasonable attorneys' fees and litigation costs incurred in defending such suit which would otherwise have been incurred by us, in accordance with the following:

"a.  Upon a settlement or final judgment comprised of liability covered by this policy and liability excluded by an exclusion giving us the right but not the obligation to defend, we will reimburse said fees and costs in the proportion to which damages not excluded therein bear to the entire amount of damages paid by you or on your behalf."

Relevant definitions in the Arch Policy were:

"13.  OCCURRENCE

"Occurrence means an accident, including a continuous or repeated exposure to substantially the same generally harmful condition, neither expected nor intended from the standpoint of the insured.

"[¶] . . . [¶]

5

"19. PROPERTY DAMAGE

"Property damage means physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it. Loss or use of tangible property unaccompanied by physical injury to that property is not property damage."

*4. Interstate's Insurance Policies*

Interstate issued its first commercial general liability policy to Garcia Plumbing in May 2006 and its second in May 2007, which ended May 5, 2008 (Interstate Policies). Coverage under the Interstate Policies stated:

"1. Insuring Agreement

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply.

"[¶] . . . [¶]

"b. This insurance applies to . . . 'property damage' only if:

"(1) The . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';

"(2) The . . . 'property damage' occurs during the policy period; and

"(3) Prior to the policy period, no insured [as defined in the Interstate Policies] and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew that the . . . 'property damage' had occurred, in whole or in part. If such a listed insured or authorized 'employee' knew, prior to the policy period, that the . . . 'property damage' occurred, then any continuation, change or resumption of such . . . 'property damage' during or after the policy period will be deemed to have been known prior to the policy period.

6

"(c) '[P]roperty damage' which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured [as defined in the Interstate Policies] or any 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, includes any continuation, change or resumption of that . . . 'property damage' after the end of the policy period.

"(d) '[P]roperty damage' will be deemed to have been known to have occurred at the earliest time when any insured [as defined in the Interstate Policies] or any 'employee' authorized by you to give or receive notice of an 'occurrence' or claim:

"(1) Reports all, or any part, of the . . . 'property damage' to us or any other insurer;

"(2) Receives a written or verbal demand or claim for damages because of the . . . 'property damage'; or

"(3) Becomes aware by any other means that . . . 'property damage' has occurred or has begun to occur." (Boldface omitted.)

5. *Tender and Denial of Coverage*

The Garcias were defended by Auto Owners Insurance Company (Auto Owners) in the Underlying Action. In June 2007 counsel for Auto Owners tendered the case to Interstate and Arch on behalf of Garcia Plumbing. In July 2007 Interstate denied the tender under the Pre-existing Damage Exclusion.

Arch denied coverage in March 2008. It relied, in part, on the fact there was no coverage under the Arch Policy because the claim arose prior to the commencement of the policy and on the Certain Projects Not Covered and Past Projects exclusions.

6. *Settlement of Underlying Action*

In December 2008 plaintiff and Garcia Plumbing settled the Underlying Action on the following terms: Garcia Plumbing stipulated to a $7.5 million judgment, subject to an agreement not to execute; Auto Owners paid $1 million; and both assigned

7

to plaintiff any rights they might have against any of Garcia Plumbing's insurers. A year later plaintiff and Garcia settled on the same terms.

*7. This Action*

In 2009 plaintiff filed the first amended complaint in this action against defendants and 17 other insurers, alleging causes of action for declaratory relief, breach of contract, bad faith, and equitable subrogation, contribution and indemnity. Based on the assignment received in the settlement with Garcia Plumbing, plaintiff alleged defendants failed to defend and indemnify Garcia Plumbing in the Underlying Action.

The parties agreed to conduct a bench trial of the bifurcated issues of the "potential for coverage" and duty to defend. Defendants also sought to litigate the validity or effectiveness of the assignments of Garcia Plumbing's and Auto Owners' rights vis-à-vis Garcia Plumbing's insurance policy.

Trial was conducted primarily on stipulated facts and documents. After argument, the court issued its ruling.

As to Interstate, the trial court held there was no coverage under the Interstate Policies because the property damage did not take place during the policy period, and before the policy period commenced Garcia Plumbing knew of the property damage. Moreover, had there been coverage it was excluded under a Pre-existing Damage Exclusion that excused Interstate from defending because property damage had occurred and suit had been filed before commencement of the policy, regardless of whether the damage continued into the policy period. Moreover, because there was no coverage, there was no right to recover for subrogation, indemnity, or contribution.

As to Arch, the court found first that its delay in denying coverage did not estop it from doing so. As with Interstate, it also ruled plaintiff did not prove potential coverage because the Arch Policy commenced after Garcia Plumbing's work, after the property damage, and after Garcia's knowledge his subpar work caused property damage. Coverage under the Arch Policy extended only if the property damage first occurred

8

during the policy period. Thus, it was irrelevant whether the original property damage might have continued into the policy period.

Even had there been coverage, it was excluded under an exclusion for past projects, which stated the occurrence triggering coverage had to take place during the policy period.

## DISCUSSION

### 1. Interpretation of Insurance Policies

The meaning "of an insurance policy is a question of law." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1,18 (*Waller*).) "'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.]' [Citation.] In determining this intent, '[t]he rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it.' [Citation.] We consider the '"clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage."' [Citation.]" (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 288.)

"[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. [Citation.] Courts will not strain to create an ambiguity where none exists. [Citation.]" (*Waller*, *supra*, 11 Cal.4th at pp. 18-19.) "We may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid. [Citation.]" (*Safeco Ins. Co. v. Gilstrap* (1983) 141 Cal.App.3d 524, 533.)

### 2. The Duty to Defend

A "duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy. [Citations.]" (*Waller*, *supra*, 11 Cal.4th

9

at p. 19.)  "[A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement.  [Citations.] . . .  However, '"where there is no possibility of coverage, there is no duty to defend . . . ."'  [Citation.]"  (*Ibid.*)

An insurer determines whether there is a duty to defend by comparing the policy provisions with the allegations in the complaint.  (*Waller*, *supra*, 11 Cal.4th at p. 19.)  It may also consider extrinsic facts.  (*Ibid.*)  And if the extrinsic facts exclude the possibility of coverage, there is no duty to defend even if the complaint might suggest otherwise.  (*Ibid.*)  Thus, the law does not support plaintiff's contention defendants must rely solely on their respective policies and the complaint to determine coverage.

Likewise, plaintiff's argument an insurer may rely only on information it knows at the time of tender is incorrect.  Relying on *Ray v. Valley Forge Ins. Co.* (1999) 77 Cal.App.4th 1039 and *Haskel v. Superior Court* (1995) 33 Cal.App.4th 963, she contends an insurer may not rely on any facts it learns of after denial of coverage.  But those cases do not bear out her position.

*Ray* affirms the rule that if the undisputed facts show a claim is not covered by the policy, an insurer has no duty to defend.  (*Ray v. Valley Forge Ins. Co.*, *supra,* 77 Cal.App.4th at p. 1043.)

*Haskel* is no more helpful.  It does state the general rule that a defense is required based on facts known at the beginning of the lawsuit, even if it is later determined there was no coverage.  (*Haskel v. Superior Court*, *supra*, 33 Cal.App.4th at p. 976.)  But in the present case there was no potential for coverage.  And *Haskel* confirms that an insurer may rely on undisputed facts outside of and contrary to allegations in the complaint to deny coverage.  (*Id.* at p. 975.)

Further, there would be no liability even had defendants learned of controlling facts after denying coverage.  If, as a matter of law, there is no potential for coverage, an insurer will not have a duty to defend the insured regardless of when it

10

acquired that knowledge.  "The resolution of a legal question against coverage . . . establishes in hindsight that no duty to defend ever existed and that there was never any potential for coverage.  [Citation.]"  (*State Farm General Ins. Co. v. Mintarsih* (2009) 175 Cal.App.4th 274, 284-285, fn. 6, citing *Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 657-658.)  Here, the terms of the respective policies defeated coverage as a matter of law.

Plaintiff relies heavily on a principle that an insurer has a duty to defend whenever the complaint alleges or the insurer knows of facts that "potentially give rise to a claim against the insured."  (*Scottsdale Ins. Co. v. MV Transportation*, *supra*, 36 Cal.4th at p. 655; *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 296 (*Montrose*).)  We do not quarrel with that principle.  We do quarrel, however, with the manner in which plaintiff seeks to apply it.

*a. Interstate Policies*

Under its policies, Interstate had a duty to defend only if property damage occurred within the policy period, and if Garcia Plumbing had no knowledge of any such occurrence before the first of the policies commenced.   According to the Interstate Policies, property damage first occurs when the insured learns of or reports same.

Here, the first of the Interstate Policies commenced in May 2006.  Garcia Plumbing was informed of property damage in the early months of 2004, over two years earlier.  The Underlying Action, in which it was alleged Garcia Plumbing caused property damage, was filed in October 2004.  Garcia Plumbing was defended by Auto Owners to whom it reported the claim.  Thus, under the definitions of the Interstate Policies, there was never any coverage for the Garcia Plumbing claim.

Plaintiff points out Interstate denied coverage two weeks after demand. She unreasonably draws the inference Interstate failed to "determin[e] the full extent of the alleged property damages and when the same occurred" and thus did not conduct a

11

"meaningful factual investigation." This argument is belied by the allegations in the complaint. Interstate properly based its denial of coverage on these facts.

Moreover, the Garcias were notified of the occurrence and the property damage in February and March of 2004 well before the Interstate Policies commenced. As stated above, that Interstate may not have known of these facts at the time it denied coverage does not change the result. There was never any coverage for the Garcia Plumbing claim under the Interstate Policies as a matter of law, regardless of when Interstate learned of these facts. (*State Farm General Ins. Co. v. Mintarsih*, *supra*, 175 Cal.App.4th at pp. 284-285, fn. 6.)

Plaintiff points to language that describes the occurrence of property damage during the policy period, not known by the insured before the inception of the policy, and that continued after the conclusion of the policy term. She concludes from this that some "new and different property damages" "may have occurred or first started to occur during Interstate's policy period," thus triggering a duty to defend.

We reject this argument out of hand. It is pure speculation with no basis in fact. There are no allegations in the complaint nor has plaintiff produced any evidence of any occurrence beginning during the Interstate Policies' terms.

Although the duty to defend is broad, it is not unlimited, and Interstate was not required to disprove mere conjecture. (See *Montrose*, *supra*, 6 Cal.4th at pp. 300-301 ["insured cannot manufacture a dispute on summary judgment . . . by refusing to concede the truth of a fact without adducing some evidentiary support for its position"].) Under plaintiff's theory, an insurer could virtually never deny coverage because there could always be some possible new damages potentially at issue. That is not the law.

We are also not persuaded by the fact the fourth amended complaint was filed after the first of the Interstate Policies commenced. The allegations against the Garcias are identical in the fourth amended complaint to those alleged in the third amended complaint, filed prior to the first of the Interstate Policies.

12

Finally, because the Interstate Policies did not provide coverage in the first instance, we need not discuss the Pre-existing Damage Exclusion as an alternative basis for affirming the judgment.

### b. *Arch Policy*

As with the Interstate Policies, Garcia Plumbing was not entitled to coverage under the Arch Policy for the damages claimed in the Underlying Action. The policy applies only if the property damage "first takes place during the policy period." Plaintiff was required to make such a showing but failed to do so. (*Waller*, *supra*, 11 Cal.4th at p. 16 [insured has burden to "'bring the claim within the basic scope of coverage'"].)

All of Garcia Plumbing's work and the initiation of the damages were in 2004, before commencement of the Arch Policy in May 2005. That property damage might have continued into the policy period is of no moment. The Arch Policy applied only if the property damage *first occurred* during the policy period. It further provided that "[a]ll . . . property damage arising from an occurrence shall be deemed to first take place at the time of the first such . . . property damage, regardless of the date of manifestation, . . . even though the nature, type or extent of such . . . property damage may be continuous, progressive, cumulative, changing or evolving."

Making the same argument she made as to Interstate, plaintiff maintains that, at the time of tender, Arch could not conclusively eliminate the possibility of new damage. And as with Interstate, there were no facts showing any possible coverage. For the same reasons we reject this claim.

Attacking from a different angle plaintiff asserts Arch did not timely deny the claim but "abandoned" Garcia Plumbing. Under California Code of Regulations, title 10, section 2695.7, subdivision (b), an insurer is required to accept or deny a claim within 40 days of receiving a claim. Arch did not deny tender for 10 months. As a consequence, plaintiff contends, Arch was estopped from denying coverage.

13

Plaintiff acknowledges there is no California law to support her estoppel argument, relying instead on *Hartford Ins. Co. v. County of Nassau* (2008) 46 N.Y.2d 1028. There the court held, as a matter of law, that a two-month delay in responding to a tender was unreasonable, precluding the insurer from denying coverage. (*Id.* at pp. 1029-1030.) Of course, this case does not bind us. (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 905.) Further, plaintiff has not provided any analysis as to why *Hartford* should apply in California and and we see no reason to follow it.

In addition, plaintiff has no standing to base a claim on an alleged violation of this insurance regulation. Only the California Insurance Commissioner has the power to enforce same. (*Rattan v. United Services Automobile Assn.* (2000) 84 Cal.App.4th 715, 724; see *Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1077.)

Plaintiff's argument the failure to timely respond to a demand for tender is relevant in a bad faith action has nothing to do with the claim here, that Arch is estopped from denying coverage.

Finally, Garcia Plumbing was defended in the Underlying Action and did not suffer any damage from Arch's delay in responding. There is no evidence Garcia Plumbing detrimentally relied on Arch's conduct, a necessary component of an estoppel theory. (*Waller*, *supra*, 11 Cal.4th at p. 34.)

Moreover, Arch did not have a duty to defend. Estoppel "'"'based upon the conduct or action of the insurer[ is] not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrine[] in this respect is therefore to be distinguished from the . . . estoppel to assert[] grounds of forfeiture . . . .'"' [Citation.]" (*Advanced Network, Inc. v. Peerless Ins. Co.* (2010) 190 Cal.App.4th 1054, 1066.)

Allowing plaintiff to recover on the basis of estoppel would provide her a windfall, especially since she is acting only as an assignee of Garcia Plumbing. That she seeks contribution from Arch for her defense costs does not support her argument.

14

Plaintiff is not entitled to contribution because there was no potential for coverage under the Arch Policy.

Because there was no coverage to begin with, we need not discuss the argument that because Arch relied on the Past Projects Exclusion, it was required to reimburse plaintiff for reasonable attorney fees and litigation expenses.

*3. Evidentiary Objections*

Plaintiff alludes to the court's alleged abuse of discretion in denying evidentiary objections to what she styles as "new evidence" on which Interstate purportedly relied in justifying its denial of coverage. If plaintiff intended to raise this as an issue, she forfeited it for failure to set it out under a separate heading and support it with authority and reasoned legal argument. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

*4. Validity of Assignments*

In her last argument, plaintiff asserts the assignments by Frank Garcia Plumbing, Garcia, and Auto Owners of any rights they may have had against defendants were valid. We need not address this issue because, as discussed above, the assignors had no rights against defendants and therefore nothing to assign.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.

15