Filed 12/21/15  Hayes v. Hayes CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WILLIAM P. HAYES, as Co-Trustee etc., | B259258 |
| | (Los Angeles County |
| Plaintiff and Respondent, | Super. Ct. No. BP141503) |
| v. | |
| BRIAN J. HAYES et al., as Co-Trustees etc., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael I. Levanas, Judge.  Affirmed.

Klapach & Klapach and Joseph S. Klapach for Plaintiff and Respondent.

Burkley & Brandlin and Walter R. Burkley for Defendants and Appellants.

Appellants Brian and Randy Hayes appeal the trial court's order of July 30, 2014, giving their brother, respondent William Hayes, the right to purchase a parcel of Nebraska farm land owned by their parents' trust at the price determined by a Nebraska court order setting the total "clear market value" for Nebraska inheritance tax purposes.[1]  Appellants contend the provision giving William the right to purchase should be construed to require him to pay the property's "'appraised' value," as determined by a private appraiser.  In addition, for the first time on appeal, appellants contend that William should be precluded from purchasing the property for the amount set forth in the Nebraska order because he obtained the order surreptitiously and without their input.

A finding that William acted without his brothers' knowledge and consent cannot be made without resort to evidence and resolution of factual issues, and therefore cannot serve as a basis for reversing the trial court's order.  Moreover, the record establishes that appellants had ample opportunity to provide input into the determination of the property's market value in the Nebraska proceeding, but chose not to do so.  Exercising our de novo review of the court's interpretation of the language of the purchase provision, we conclude the court's interpretation was the only reasonable one.  Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Background Facts*

Certain essential facts are not in dispute.  Appellants, Brian and Randy, and respondent, William, are the sons of David and Charlotte Hayes.  In February 1990, David and Charlotte created the "Revocable Living Trust of David J. Hayes and Charlotte M. Hayes" (the Trust).  The couple transferred into the Trust all of

---

[1]     Because they share a surname, the parties and their parents will be referred to by their first names.

their property, including two parcels of farm land located in Chase County, Nebraska that Charlotte had inherited from her parents and that had been in the family for more than 100 years. The Trust provided that upon the death of both David and Charlotte, the couple's assets would be distributed equally to appellants, William and a half-sibling, John Hayes.[2] The Trust required that upon the death of the first spouse, two subtrusts would be created: Trust A, which would include the surviving spouse's separate property and interest in the couple's community property, and Trust B, which would include the balance of the Trust estate and become irrevocable.

In 1998, David and Charlotte amended the Trust to provide: "Prior to the distributions of the assets of Trust A or Trust B, after the death of both Trustors, [William] is granted the option to purchase the land in Nebraska owned by the Trustors at the appraised value of such land as determined for inheritance tax purposes . . . ."[3]

Charlotte died in 2004. In 2005, David divided the couple's assets between the two new trusts, executing an "Allocation Agreement and Assignment of Trust Assets to Sub-Trust A and to Sub-Trust B," which allocated Parcel No. 2 of the Nebraska farm land to Trust A (his survivor's subtrust), and Parcel No. 1 of the Nebraska farm land, to Trust B (Charlotte's irrevocable subtrust).[4] In 2005, David executed a restatement of Trust A, which omitted William's option to purchase. When David died in 2012, appellants and William became co-trustees of the Trust and subtrusts.

---

[2]     John is not a party to these proceedings.

[3]     By 1998, William had been living in Nebraska and managing the farm for more than 20 years.

[4]     The document stated Parcel No. 1 had a value of $76,000 and Parcel No. 2 had a value of $60,000.

B. *Nebraska Proceedings*

In early 2013, William retained a Nebraska attorney, who wrote to the Chase County Attorney inquiring whether the "fair market value" of the Nebraska farm land for inheritance tax purposes could reasonably be determined by dividing the assessed value of the parcels by 75 percent, the countywide ratio for assessed value to sales price. William thereafter filed in the Chase County court a "Petition for Determination of Inheritance Tax." Attached was an "inheritance tax worksheet," stating that Parcel No. 1 had an assessed value of $109,186 and an "[e]stimated fair market value" of $145,581.33, and that Parcel No. 2 had an assessed value of $61,985 and an "[e]stimated fair market value" of $82,646.66, for a total of $228,227.99.[5] (Caps omitted.)

On March 21, 2013, the Nebraska court issued an order "[d]etermining and [a]ssessing [i]nheritance [t]ax," which stated: "Upon consideration of the evidence and the Petition for Determination of Inheritance Tax and all supporting documents . . . filed and incorporated by reference, the Court Finds, Orders, and Determines that: [¶] . . . [¶] [t]he County Attorney for [the] county in which the property described in the petition is located has executed and filed with this Court a Waiver of Notice to show cause . . . [¶] [t]he values set forth in the Petition for Determination of Inheritance Tax and the Inheritance Tax Worksheet accurately reflect the total clear market value of the assets listed therein subject to Nebraska inheritance tax . . . ." Based on those values, the court assessed inheritance taxes of $1,045.35.

---

[5]     The estimated market values were obtained by dividing the assessed values by 75 percent (.75), resulting in a step up in value of approximately 33 percent. Appellants do not dispute that $109,186 and $61,985 were the assessed values for the parcels in 2012.

C. *The Parties' Petitions*

In May 2013, William filed a petition in the court below alleging, among other things, that appellants were failing to follow the Trust's terms by refusing to allow him to exercise his option to purchase the Nebraska farm land. The petition sought an order allowing William to purchase both parcels.

After William's petition was filed and served, appellants obtained an appraisal from a certified Nebraska appraiser, who expressed the opinion that Parcel No. 1 had a market value of $336,000 in 2012, and that Parcel No. 2 had a market value of $192,000. In August 2013, appellants wrote to the Chase County Attorney, asserting that "material misinformation was made in the . . . petition for Inheritance Tax Determination," and that the parcels had been appraised for $336,000 and $192,000. Although the Nebraska court had issued its order evaluating the property for tax purposes several months earlier, the Chase County Attorney wrote back asking whether appellants intended "to file an amended inheritance tax worksheet, to show the amended values, and the corresponding correct inheritance tax," and stating that he "assumed that [appellants] would in fact be mak[ing] new filings, since [they] informed [him] of the incorrect valuations." Nothing in the record suggests appellants did so.

In October 2013, appellants filed a response to William's petition in the instant action, stating that the farm land could not be sold because the parties "had differences of opinion as to what the proper appraised value of [the Nebraska farm land] was for inheritance tax purposes." In December 2013, appellants filed a Petition for Instructions, asking the court to "fix the appropriate value of certain farm land in Nebraska that William has an option to purchase [Parcel No. 1] at $336,000," and to rule that there was no option to purchase Parcel No. 2. The petition stated that the brothers disagreed on the value of the Nebraska farm land, that William "claimed Parcel #1['s] value to be $145,581 in a petition for

5

inheritance tax determination filed in Chase County, Nebraska," and that appellants had obtained an appraisal with a higher value. Neither the opposition to William's petition nor appellants' petition for instructions suggested that William had gone behind his brothers' backs in having his attorney contact the Chase County Attorney or obtaining the Nebraska court's evaluation.

At several preliminary hearings, the trial court indicated that the dispute over William's right to purchase the Nebraska farm land would be resolved by the court's interpretation of the Trust language. The parties filed points and authorities outlining their positions. William contended he should be allowed to purchase both parcels for $228,227.99, in accordance with the Nebraska court's evaluation. Appellants argued that Parcel No. 2 was no longer subject to the right to purchase provision, and that the court should fix the value of Parcel No. 1 at $336,000 in line with the June 2013 appraisal. Appellants argued the Nebraska court order did not represent "appraised value," but did not contend the Nebraska court's evaluation was void for having been obtained without their knowledge and consent.

D. *Court's Order*

At the May 28, 2014 hearing on the parties' competing petitions, the court expressed the view that only Parcel No. 1, allocated to Subtrust B, would be subject to the right to purchase. It further stated its intent to rule that the purchase price of Parcel No. 1 would be determined in accordance with the Nebraska court order. The court explained: "The language that I think is compelling . . . says 'it may be purchased at the appraised value of such land.' [¶] Now, if it stopped there and just said that, I would say [appellants'] argument has a little more strength. But it doesn't. It says, 'as determined for inheritance tax purposes.' . . . [¶] . . . [¶] So if the language just said, 'appraised value,' I think [appellants would] have a

6

better argument, but it doesn't. That extra language . . . is telling to the court." Counsel for appellants argued that appraised value should be interpreted as appraised market value. He did not request an evidentiary hearing, or raise any objection based on the manner in which the Nebraska evaluation was obtained.

On July 30, 2014, the court issued its final order, finding: (1) that the provision of the Trust giving William the option to "purchase the land located in Nebraska owned by the Trustors at the appraised value of such land as determined for inheritance tax purposes" applied to Parcel No. 1 of the Nebraska farm land held in Trust B, but not to Parcel No. 2 held in Trust A; (2) that Parcel No. 1 had a value of $145,581.33, as determined by the order of the Nebraska court; and (3) that William would be permitted to purchase Parcel No. 1 for $145,581.33. Brian and Randy appealed.[6]

## DISCUSSION

A. *Reasonableness of Trial Court's Interpretation of Trust Language*

In interpreting a trust instrument, a court "seek[s] the intent of the trustors as revealed in the document considered as a whole." (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1440.) "Ordinary words must be given their normal, popular meaning and legal terms are presumed to be used in their legal sense." (*Scharlin v. Superior Court* (1992) 9 Cal.App.4th 162, 168; see Probate Code, § 21122.) In interpreting a written instrument, courts "'do not engage in forced construction'" or "'strain to create an ambiguity where none exists.'" (*Advanced Network, Inc. v. Peerless Ins. Co.* (2010) 190 Cal.App.4th 1054, 1064, quoting *Ray v. Valley Forge Ins. Co.* (1999) 77 Cal.App.4th 1039, 1044.) "'We must give significance to every word . . . , when possible, and avoid an interpretation that renders a word

---

[6] William did not appeal the finding that the right to purchase did not apply to Parcel No. 2 held in Subtrust A.

surplusage.'"  (*Advanced Network, Inc.*, *supra*, at p. 1063, quoting *In re Tobacco Cases( I)* (2010) 186 Cal.App.4th 42, 49.)

Where, as here, the trial court did not rely on extrinsic evidence to aid its understanding, we review its interpretation de novo.  (*Burch v. George* (1994) 7 Cal.4th 246, 254.)  "'"[I]n interpreting a document such as a trust, it is proper for the trial court in the first instance and the appellate court on de novo review to consider the circumstances under which the document was made so that the court may be placed in the position of the testator or trustor whose language it is interpreting, in order to determine whether the terms of the document are clear and definite, or ambiguous in some respect."'"  (*Estate of Powell*, *supra*, 83 Cal.App.4th at p. 1440, quoting *Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 73.)

As discussed, the 1998 amendment to the Trust provided that William was "granted the option to purchase the land in Nebraska owned by the Trustors at the appraised value of such land as determined for inheritance tax purposes."  Read as a whole, we find no ambiguity in the purchase provision:  once the value of the land had been determined for inheritance tax purposes, William was given the right to buy it for that price.  There is no dispute that for Nebraska inheritance tax purposes, the value of the property was determined to be $145,581.33.  Although the provision does not specifically state the value is to be as determined for *Nebraska* inheritance tax purposes, the court's decision to derive the purchase price from the Nebraska court's order was reasonable, as Charlotte was from Nebraska, the property is located in Nebraska and California has no inheritance tax.  (See *Estate of Claeyssens* (2008) 161 Cal.App.4th 465, 468.)  Our de novo review, achieved by placing ourselves in the position of the trustors and avoiding an interpretation that renders any phrase surplusage, leads us to conclude that the trial court properly interpreted the language of the 1998 purchase provision when it granted William the right to buy Parcel No. 1 for $145,581.33.

8

Focusing on the fact that the valuation of property for tax purposes is often referred to as its "'assessed' value," appellants contend that the use of the term "'appraised' value" requires application of the rule that legal terms are to be construed in their legal sense, creating an ambiguity. But the Trust expressly defines the value as one "determined for inheritance tax purposes." This removes any ambiguity that might otherwise exist. (See *County of San Diego v. Ace Property & Casualty Ins. Co.* (2005) 37 Cal.4th 406, 415 [fact that word or phrase isolated from its context is susceptible of more than one meaning does not create ambiguity].) "Appraise" can simply mean to estimate the monetary value of or to assign a value to, and a property may be "appraised" in that sense for tax purposes. (See Webster's New College Dictionary (2005), page 69.) Moreover, a provision will be considered ambiguous only when it is capable of two or more *reasonable* constructions. (*County of San Diego, supra,* 37 Cal.4th at p. 415.) Appellants posit no reasonable interpretation of the provision as a whole, insisting that we simply ignore the phrase "as determined for inheritance tax purposes" in order to prevent an unequal division of property. But the original Trust already required an equal division. By executing the 1998 amendment, David and Charlotte clearly intended that William obtain a benefit not provided under the original instrument in acknowledgement of his efforts in singlehandedly caring for the farm land for decades.

Finally, we are not convinced that the valuation of the Nebraska court, adopted by the trial court, was significantly out of line with the property's actual value or will result in a wildly unbalanced distribution of assets. Nebraska courts strive to determine "fair market value" when making a finding as to a property's "clear market value" for tax purposes. (*County of Lancaster v. Union Bank & Trust Co. (In re Estate of Craven)* (2011) 281 Neb. 122, 127 [794 N.W.2d 406, 410].) Here, the final valuation used to calculate the inheritance tax was obtained

9

by consultation with the Chase County Attorney, and required use of a countywide ratio that substantially increased the property's valuation over its 2012 assessed value. The trial court's interpretation of the purchase provision to incorporate this valuation reflects the reasonable assumption that David and Charlotte wanted the land to stay in the family by permitting William to purchase the property without competition at a price that was fair to his brothers, although perhaps less than could have been achieved on the open market. We find no basis to depart from the court's interpretation.

### B. *Validity of Nebraska Order*

Citing cases that stand for the proposition that the powers of co-trustees are joint and exercisable only by unanimous action, appellants contend that William's act of "[s]urreptitiously" obtaining the Nebraska order breached his fiduciary duty or duty of loyalty to his co-trustees, rendering the order void or at least precluding the trial court from relying on it in setting the purchase price for Parcel No. 1. Notably, appellants did not raise this argument before the trial court and presented no evidence that William acted surreptitiously. "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness -- it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal; and it also reflects principles of estoppel and waiver." (Eisenberg, et. al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2009) ¶ 8:229, p. 8-155, italics deleted; accord, *Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1323; *People ex rel. Dept. of Transportation v. Superior Court* (2003) 105 Cal.App.4th 39, 46; *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847.)

An appellate court may "in the exercise of its discretion, consider a new theory on appeal when it is purely a matter of applying the law to undisputed facts." (*Colony Ins. Co. v. Crusader Ins. Co*. (2010) 188 Cal.App.4th 743, 751.) In their reply brief, appellants contend that the effect of William's actions in allegedly initiating the Nebraska petition on his own presents a pure question of law. We disagree. Pursuant to William's request and Code of Civil Procedure section 909 and California Rules of Court, rule 8.252(c), we accepted as additional evidence emails between the brothers demonstrating that appellants asked William to handle matters related to the Nebraska property, and that he informed them of his intent to engage an attorney to assist in getting the Nebraska state inheritance tax calculated. This evidence refutes appellants' contention that the issue raised is purely one of law, and establishes that William could have presented evidence disproving the allegation that he acted behind the backs of his co-trustees.

Moreover, even were we to find that William obtained the Nebraska court's March 2013 evaluation order without appellants' knowledge and consent, the record establishes that they were given ample opportunity to challenge the order after its issuance. As their letter to the Chase County Attorney attests, appellants were aware of the Nebraska order by August 2013. After appellants provided the Chase County Attorney with the June 2013 appraisal, his October 2013 letter indicated the County's willingness to reconsider the valuation, and encouraged them to submit a new filing. (See *State ex rel. Nebraska State Bar Assn. v. Roubicek* (1987) 225 Neb. 509, 512 [406 N.W.2d 644, 648] [describing general procedure by which property is evaluated for Nebraska inheritance tax purposes: "When the person preparing the inheritance tax worksheet has completed same, he submits same to the local county attorney who either gives his approval or rejection. If rejected, usually because of an argument over values placed on listed inventory, the matter is either negotiated until a settlement is reached or the matter

11

is submitted to the County Court for a hearing to determine the disputed issues."].) Nevertheless, appellants elected not to challenge the Nebraska court order setting the value of the property for inheritance purposes. That the Nebraska court's valuation did not include their input is entirely the result of their own inaction. We, therefore, reject their contention that the Nebraska valuation was obtained by William unfairly or that the trial court should not have relied on it.

### DISPOSITION

The July 30, 2014 order is affirmed. William is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


WILLHITE, Acting P. J.


COLLINS, J.